Dutton's Estate.

Argued May 12, 1930. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Charles A. Mertens,* with him *Charles A. Mertens, Jr.,* for appellant.—Calvin I. Dutton was entitled under the terms of his father's will, to the income arising from the proceeds of the sale of the farm of his father: Simpson's Est., 245 Pa. 244; Sigel's Est., 213 Pa. 14; Brackbill's Est., 56 Pa. Superior Ct. 71; Billing's Est., 268 Pa. 69; Schattenberg's Est., 269 Pa. 90; Cassidy's Est., 224 Pa. 199; Thomas's Est., 241 Pa. 290; Mifflin's Est., 49 Pa. Superior Ct. 605; Frechie's Est., 62 Pa. Superior Ct. 48; Whelen's Est., 175 Pa. 23; Dobbin's Est., 221 Pa. 249; Patton's Est., 79 Pa. Superior Ct. 314; Schott's Est., 78 Pa. 40; Wootten's Est., 253 Pa. 136; Bruckman's Est., 195 Pa. 363; Feeney's Est., 293 Pa. 273.

96

*Carlton M. Randall,* with him *Harold F. Mook,* for appellee, cited: Schattenberg's Est., 269 Pa. 90; Reiff v. Pepo, 290 Pa. 508.

OPINION BY MR. JUSTICE WALLING, June 21, 1930:

Ira K. Dutton, late of Erie County, died testate, January 20, 1914, survived by a widow, Etta F. Dutton, a son, Calvin I.. Dutton, and three grandchildren, one of whom has since died. His last will provides as follows: "I give, devise and bequeath unto my beloved wife, Etta F. Dutton the use of all my property real, personal and mixed of what nature or kind so ever or wheresoever the same shall be found at the time of my death, as long as she remains my widow, and after her remarriage or death, that I bequeath the use of the same to my son (Calvin I. Dutton) as long as he lives, then to my grandchildren share and share alike. And I do nominate, constitute and appoint my wife Etta F. Dutton and my son Calvin I. Dutton, executors of this my last will and testament." Testator owned a farm in Harborcreek Township and a house and a lot in Erie. Shortly prior to his death testator executed a codicil as follows: "I desire that my son C. I. Dutton shall have the full use of my farm located in Harborcreek Township as long as he desires to live thereon, providing however that he keeps the·same in good condition and the buildings thereon in repair, whenever he fails to comply with these my demands then my wife Mrs. E. F. Dutton to have power to dispose of said property and to have the full use of the purchasing money as prescribed in my will. I also give to my wife Mrs. E. F. Dutton the power to dispose of the property known as 853 East 18th St., Erie, Pa., and the right to use the proceeds as aforesaid." The widow elected to take under the will and on August 19, 1915, the son, Calvin, filed of record a written declaration discharging and releasing the farm from any interest he had therein by virtue of the codicil and declining to accept it under the conditions thereof. The

next day the widow, under the power given in the codicil, conveyed the farm to the son, the title passing to him through a third party, for the consideration of $5,000, secured by a mortgage of that amount on the farm. Three years later the son conveyed the farm to his wife's parents for $7,000, and received from them a mortgage of $5,000, on the farm, payable to the executors, which replaced the $5,000 mortgage given when the farm was purchased by Calvin. The principal of the later mortgage is still unpaid. When the widow conveyed the farm to the son she also, by virtue of the same power, conveyed to him the house and lot in Erie for the consideration of $2,500. Shortly thereafter, in October, 1915, the widow remarried and is now Mrs. Etta F. Dennison. The executors qualified and in 1928 filed a second partial account; on exceptions filed thereto by the grandchildren, the orphans' court surcharged accountants with the interest on the $5,000 mortgage since the widow's remarriage, and also ordered its present assignment to the surviving grandchildren; from which the executors brought an appeal as did Calvin I. Dutton, individually.

This surcharge and award of distribution were based upon the conclusion of the orphans' court that the son by refusing to accept the farm under the terms of the codicil forfeited the interest therein given him in the will, as the widow did, of course, by her remarriage; hence, that the right to the consideration received from the sale of the farm vested at once in the grandchildren. In our opinion, so far as relates to the interest of the son, this conclusion cannot be sustained. The will and codicil must be construed together as one instrument (Thomas's Est., 241 Pa. 290; Billing's Est. (No. 1), 268 Pa. 67); and the latter revokes the former only so far as repugnant thereto (Schattenberg's Est., 269 Pa. 90), or inconsistent therewith: Billings's Est., supra. A codicil is rather an addition to than a revocation of the will: Sigel's Est. (No. 1), 213 Pa. 14, 17. "The rule

is well established, that a codicil shall not disturb the dispositions of the original will further than is absolutely necessary for the purpose of giving it [the codicil] effect": Hawkins's Orphans' Court Principles and Practice, page 63. This is quoted with approval in Schattenberg's Est., supra, page 93. "The clear provisions of a will are only affected by a codicil to the extent absolutely necessary to give effect to the codicil": Frechie's Est., 62 Pa. Superior Ct. 48, 53. See also Mifflin's Est., 49 Pa. Superior Ct. 605. A will must be construed in the light of all of its provisions: Schott's Est., 78 Pa. 40. On the remarriage of the widow, the will in plain words gives the son the life use of testator's property, which includes the farm; while the codicil gave him the use of the farm from testator's death so long as he desired to live thereon and keep it in good condition. The son declined to live upon the farm under the conditions, but what he gave up was expressly limited to the interest in the farm given him by the codicil. It in no manner related to his interest therein under the will. In other words, Calvin's refusal of the option, given him in the codicil, to occupy the farm and keep it in good condition, did not deprive him of the interest therein which the will gave him. The codicil made no attempt to change that provision of the will. True, the codicil confers upon the widow the power to sell the farm on the son's refusal to occupy it. This she exercised and the proceeds took the place of the farm; that is, she was entitled to the use thereof until remarriage and thereafter the same right vested in the son for life. The codicil gives nothing to the grandchildren and they take nothing under the will until the son's death. The exercise of the power of sale changed the form of the property but did not deprive the life tenant of his interest therein; neither did the fact that the son, Calvin, became the purchaser of the farm. Of course, occurrences may accelerate the rights of those in remainder (see Feeney's Est., 293 Pa. 273; Fletcher v. Hoblitzell, 209

Pa. 337, 344), but this record discloses nothing to warrant the conclusion of an acceleration.

The orphans' court can make such order, if any, as may be necessary to safeguard the principal of the estate for the grandchildren. As the interest on the mortgage was the property of one of the executors, they cannot be surcharged with the amount thereof. Under our construction of the will and codicil, the time for the distribution of the corpus of the estate has not arrived, and questions relating thereto need not now be decided. The question as to whether the orphans' court erred in surcharging the executors with the $375, claimed as commissions, is not suggested in the statement of questions involved in either appeal and therefore will not be considered.

The decree appealed from is reversed so far as relates to the surcharge of the executors with the interest on the $5,000 mortgage and the order for the assignment of this mortgage to the grandchildren is set aside. Costs to be paid by the estate.