## Pruner Estate.

Argued January 7, 1960. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

reargument refused August 8, 1960.

*John G. Love*, with him *John Russell, Jr., Love & Wilkinson*, and *Morgan, Lewis & Bockius*, for appellant.

*Benjamin C. Jones*, with him *Musser W. Gettig*, for appellees.

*Ralph S. Snyder*, Deputy Attorney General, with him *Anne X. Alpern*, Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE BELL, June 30, 1960:

Edmund J. Pruner died May 4, 1904, testate. In the pertinent portion of his will he provided: "For the purpose of benefiting Humanity and caring for those in need I give and bequeath in Trust to the Corporation of Tyrone and the Corporation of Bellefonte, Pa. The Old Homestead which I own at Bellefonte, Pa. for a Home for Friendless Children from the Towns of Tyrone and Bellefonte. the Home to be called the E J Pruner Home for Friendless children and for the purpose of Endowing said Home I bequeath In Trust forever to the Corporation of the Borough of Tyrone and the Corporation of the Borough of Bellefonte Pa the Brick Building on Penna Avenue near Juniata River known as the Pruner Block and also the Block corner Penna Avenue & 11th street known as the Hoover Block and also my land in the State of North Dakota and my land in State of Kansas and my land in Taylor Worth & Rush Township Centre Co Pa for the purpose of an Endowment to said School the children sent to said Home are not to be under five years of age and when they arrive at 12 years of age places are to be obtained for them By the Board of Managers of the

Home When there is an excess of Revenue for the support of Friendless Children from the Towns of Tyrone and Bellefonte then Friendless children can be admitted from Altoona Pa. It is distinctly to be understood that this Home is not to be a Home for Pauper Children but for children who have no Parents. I appoint the Fidelity Trust and Safe Deposit Co of Phila my Executor and to Carry out the provisions of this will."

The Codicils are couched in the following language: "Should there be any Reasons why the Borough of Tyrone and the Borough of Bellefonte Cannot Carry out the provisions of this will then the property for said Home is bequeathed to my niece Sallie M. Hayes. E. J. Pruner. As I have stated on page 8th of this will should there exist any Reasons why the Borough of Tyrone and the Borough of Bellefonte Cannot Carry out the provisions of this will in relation to the Home for Friendless Children then the Property that was bequeathed to the Borough of Tyrone and Borough of Bellefonte for the purpose of a Home if such becomes invalidated from any cause then said Real Estate—is bequeathed absolutely to my Niece Sallie M. Hayes—of Bellefonte Pa and all legacies that may Revert back to Estate of E. J. Pruner are for the benefit of the Home for Friendless Children provided said Borough of Tyrone and Borough of Bellefonte can Carry out the provisions of the Will and if they cannot then all Legacies that Revert back to Estate of E J Pruner to be vested in Sallie M. Hayes. E. J. Pruner"

"The Houses on Penna Avenue Tyrone Pa near Paper Mill I give in Trust to Clara R. Moyer she to receive the Rents and Income from the same during her natural life She Keeping the same in Repair and Paying the Taxes on the same and at the death of Clara R. Moyer the two Houses to Revert back to Estate of

E. J. Pruner and to go to the Home for Friendless Children provided they the Corporation of Tyrone & Bellefonte can accept the same and carry out the provision of this will & otherwise if they cannot the two Houses to go to my Niece Sallie M. Hayes of Bellefonte, Pa."

The will contained no catch-all residuary clause.

The Boroughs of Tyrone and Bellefonte accepted the trust and appointed a Board of Managers for the management of the Home. The heirs of Sallie M. Hayes claim the reversionary estate because the purpose of the trust has failed. The auditing Judge rejected their plea because "Examination of the records of Centre and Blair Counties will indicate that there are orphans, and friendless children, who need homes, or a place to be domiciled, and are being so handled. Many of these could be domiciled in the E. J. Pruner Home for Friendless Children." The heirs of Sallie M. Hayes appealed.

Testator died in 1904. From 1918 until 1935 there was a total of 15 children in the Home, some of whom remained in the Home until they were 18 or 19 years of age. Commencing April 15, 1942, there were no children in the Home for two years; from May 7, 1944 until February 1, 1945, there were only two children in the Home; from April 8, 1945 until May 4, 1949, 4, 1949 to the present date there have been no children there was only one child in the Home; and from May in the Home. The Board of Managers of the Home notified not only the Boroughs of Tyrone and Bellefonte, but also the Salvation Army, the Council of Churches in Tyrone and Bellefonte, the Welfare Agencies in those Counties, and persons and organizations who are caring for and looking after friendless or homeless children, of the Home's facilities. In spite of the efforts of the Board of Managers to secure friendless children for the Home, no children have been in the Home for 10 years.

Personal property represented by investments total over $31,000; the total gross income to support the home is $8,779 a year; and expenses of the Home total $4,819 a year.

Charities are favorites of the law and a gift, even for a specific charitable purpose, should be liberally construed whenever reasonably possible. The lower Court, considering the will in its entirety, has construed this charitable gift—a Home for friendless children who have no parents and who come from the Towns of Tyrone and Bellefonte—liberally in favor of the charities, i.e., to be a Home for Friendless Children, even children with parents, who come not only from the Boroughs of Tyrone and Bellefonte and from Altoona, but also from the general area surrounding them. However, if within a reasonable time, there are no children available for the Home in accordance with the terms, provisions, and conditions prescribed in the will, or if for any other reason or for any cause the purpose of the trust has failed or cannot be faithfully carried out, the trust must terminate and the principal thereof must revert, in accordance with the clear language and intent of testator's will to his estate to be vested in his niece, Sallie M. Hayes.

The lower Court concluded, we repeat, that the records of Centre and Blair Counties "indicate that there are orphans, and friendless children, who need homes, or a place to be domiciled", and that many of them could be domiciled in the Pruner Home for Friendless Children. If that is so, no explanation appears on the record why they have not been placed in the Pruner Home. Probably it is because there are no children available in spite of the Court's belief to the contrary. Perhaps this is so because it is a matter of common knowledge that in the last ten years the demand for babies and young children for adoption by yearning parents far exceeds the supply.

We must interpret the testator's intention from an examination of his entire will: *Wanamaker Estate,* 399 Pa. 274, 159 A. 2d 201; *Richley Estate,* 394 Pa. 188, 146 A. 2d 281; *Weaver Estate,* 390 Pa. 128, 134 A. 2d 675.

Mr. Pruner did not create a gift to charity generally—he created a specific gift for a specific charitable purpose, with a reversionary gift over to his niece Sallie M. Hayes, if the purpose of the charitable gift failed, or could not be carried out.

In *Randall's Estate,* 341 Pa. 501, 19 A. 2d 272, the Court said (pages 508, 510-511): "In ascertaining whether the trust here involved was intended to be a specific or general one for charity, we must seek the testator's intention from an examination of the will and its codicil as one instrument: Dutton's Estate, 301 Pa. 94, 97. . . .

". . . A condition subsequent has been defined to be one which operates upon estates already created and vested, and renders them liable to be defeated: Gypsy Oil Co. v. Escoe, 126 Okla. 3, 258 P. 906, 908. It is aptly stated, in Scott on Trusts, Vol. 3, Par. 401.2: 'Where property is conveyed or devised upon a charitable trust and it is provided that if the property is not used in the manner directed it shall revert to the settlor or his heirs, the trust is subject to a condition subsequent. In such a case if the condition is broken, the settlor or his heirs are entitled to the property.'

"In the instant case, the trust conditionally vested upon its acceptance by the trustees, who were bound by the condition provided by the testator. It was, however, defeated when the trustees, as found by the learned court below, failed to establish the Home, for the will expressly provides '. . . upon the failure to use the said land for the said Home or should the purpose of this trust fail for any reason whatsoever, I do hereby direct that the said property and trust created for said pur-

pose *shall revert to my estate** and shall go to my nearest next of kin then living.' Relative to such provisions, we said, in Penna. Horticultural Society v. Craig, 240 Pa. 137, 148: 'These conditions were intended to safeguard the benefaction of the donor and we are not advised of any declared policy or rule of law making them illegal. The donor did nothing but what she had the legal right to do and *those who accepted her gift are bound by the conditions imposed.'* (Italics added.)

"Although admitted by both appellants and appellees, nevertheless, it might be well to here state that *the doctrine of cy pres has no application in the instant case,** since testator expressly provided for the reverter upon the failure of the trustees to use the land as a Home: Seitz v. Seitz, 1 Mona. 626. In Jordan's Estate, supra (p. 405), it was said: 'There is no room here for the application of that doctrine [cy pres]; testator having declared what shall be done with the fund in case the Academy is excluded from participation in it, and there being no law or public policy antagonizing his disposition of it. We have to award it as he directed, since, under such circumstances, he had an inalienable right to do as he pleased with his own.' "

Notwithstanding the conclusion of the lower Court to the contrary, it is clear that the purpose of the charitable gift has failed, the condition or event upon which the gift to the Home was to cease and determine has occurred, and the instant case is controlled on this point by *Randall's Estate.*

In *Eways v. Reading Parking Authority,* 385 Pa. 592, 124 A. 2d 92, the Court said (page 601): " 'Findings of fact made by a Chancellor who saw and heard the witnesses, when confirmed by the Court en banc, will not be reversed on appeal if they are supported

---

* Italics throughout, ours.

by adequate evidence: Pregrad v. Pregrad, 367 Pa. 177, 80 A. 2d 58; Barrett v. Heiner, 367 Pa. 510, 80 A. 2d 729. However, that well-settled principle is confined to findings which are true and genuine findings of fact. "With respect to [a] inferences and deductions from facts and [b] conclusions of law, both the Court en banc and the appellate Courts have the power to draw their own inferences and make their own deductions and conclusions: Barrett v. Heiner, 367 Pa. 510, 80 A. 2d 729; Noonan Estate, 361 Pa. 26, 63 A. 2d 80; Payne v. Winters, 366 Pa. 299, 77 A. 2d 407; Smith v. Smith, 364 Pa. 1, 70 A. 2d 620.": Kalyvas v. Kalyvas, 371 Pa. 371, 375-376, 89 A. 2d 819.' "

We adopt all the findings of fact which were made by the lower Court and which had evidence to support them, but the inferences, deductions and conclusions therefrom may be properly, validly and best made by us. We conclude that it is clear from the facts that the purpose of the gift of a Home for Friendless Children set up by testator in his will can no longer be carried out in accordance with the terms and provisions of his will. The testator provided that if such an event should occur the Home, together with other real estate and personal property given by testator for its maintenance, shall revert to his estate to be vested in his niece Sallie M. Hayes.

Sallie M. Hayes died testate February 16, 1933, survived by four children, to whom she bequeathed and devised her residuary estate. The heirs of Sallie M. Hayes are likewise heirs of the testator—the record does not disclose whether they are the sole heirs of the testator or whether there are other or closer heirs.

The interest or estate which was devised (and bequeathed) to the Boroughs of Tyrone and Bellefonte for a Home for Friendless Children has been termed a base or qualified fee: *London v. Kingsley,* 368 Pa. 109,

81 A. 2d 870; *Calhoun v. Hays,* 155 Pa. Superior Ct. 519; 2 Bl. Comm. 109; 4 Kent Comm. 9; Black's Law Dictionary, page 741, or a fee simple subject to an executory devise, or a fee simple defeasible, or a fee simple determinable:* Restatement, Property, §44, or a fee simple subject to a condition subsequent: *Randall's Estate,* 341 Pa., supra; 14 Pa. Law Enc., Estates in Property, §6 (page 7); 19 Am. Jur., Estates, §28 (pages 486-488).

Section 44 of the Restatement provides: "Introductory Note: An estate in fee simple defeasible** is defined as an estate in fee simple which is subject to a special limitation, a condition subsequent, an executory limitation or a combination of these restrictions.

"The estate in fee simple subject to a special limitation is also designated as an 'estate in fee simple determinable.' It expires in accordance with its terms. It ends automatically upon the occurrence of the event stipulated in its limitation. Its ending inures to the

---

* "Illustration: 1. A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B and his heirs so long as Town C remains unincorporated.' B has an estate in fee simple determinable. A has a possibility of reverter despite the absence of specific words creating any interest in him. Town C is incorporated. B's estate expires automatically and A becomes entitled forthwith to possession of Blackacre."

** "Special Note: The Restatement does not use any one of the following terms: 'base fee,' 'conditional fee,' 'qualified fee' or 'conditional limitation.' Legal writings have used each of these terms sometimes to denote one and sometimes to denote all, or more than one of the types of estate herein called 'estates in fee simple defeasible.' Much confusion in the law has been caused by such indiscriminate and divergent terminology. . . ." Moreover, as the Restatement of Property aptly says in Chapter 7, §154, page 529, under the heading "Future Interests": "Reversionary interests presently recognized, sometimes are the result of [ancient] historical concepts having little relation to [present day] reality." To this we add: Modern conditions make some of the ancient distinctions and refinements obsolete.

benefit of the creator of the estate, or his successor in interest, except in those rare instances where there is a valid, executory interest limited upon the same event as is the basis of the special limitation.

"The estate in fee simple subject to an executory limitation is also designated as . . . 'an estate in fee simple subject to an executory interest,' . . . . It resembles the estate in fee simple determinable in its automatic ending, . . . but is wholly unlike both of these other types of estate in fee simple defeasible in that it necessarily ends in favor of some person other than the creator of the estate."

Irrespective of the exact name of the interest or estate which testator gave to the Home for Friendless Children, it is well settled that upon the occurrence or happening of the stated event (or upon the happening or breach of the condition or limitation, or as some authorities express it "if the condition subsequent is broken"), or if the purpose fails, the estate given to the Home determines and is automatically terminated: *Randall's Estate,* 341 Pa., supra; *London v. Kingsley,* 368 Pa. 109, 119; Restatement, Property, §44; 2 Blackstone Comm. 109-110; *Slegel v. Lauer,* 148 Pa. 236, 23 A. 996; *Scheetz v. Fitzwater,* 5 Pa. 126; *Calhoun v. Hays,* 155 Pa. Superior Ct. 519, 39 A. 2d 307.

The testator provided, we repeat, that if for any reason or from any cause the Boroughs of Tyrone and Bellefonte cannot carry out the terms and provisions of his will, the real and personal estate given to the Home shall revert back to his estate and be vested in his niece Sallie M. Hayes. This future interest given to Sallie M. Hayes has been variously described as "an executory devise" or "a shifting executory devise" or "a conditional limitation": Gray, The Rule Against Perpetuities, §54 (page 57), §919 (page 791), or "an executory limitation": Restatement, Property, §25.

Irrespective of the exact name given to this future interest, all authorities agree that this executory devise (and bequest) over to Sallie M. Hayes,—unlike a reversion, or the possibility of reverter following a base fee or a fee simple determinable—is subject to the Rule Against Perpetuities. Restatement, Property, §§44, 372; 31 Corpus Juris Secundum §122(3) (page 138), Estates. Remoteness; Rule Against Perpetuities; 41 Am. Jur., §31 (page 75), Perpetuities and Restraints on Alienation; see also *Newlin Estate*, 367 Pa. 527, 80 A. 2d 819.

The gift of this future interest to Sallie M. Hayes violates the Rule Against Perpetuities and is void: *Newlin Estate*, supra; Restatement, Property, §228, Comment a and Illustration 2, §229, Illustration 8.

Illustration 8 is: "8. A, owning Blackacre in fee simple absolute, makes an otherwise effective devise of Blackacre 'to the B Church Corporation, in fee simple, to be held by it so long as said land shall be devoted to the support of the Christian religion, and when said real estate shall be diverted from such uses then Blackacre shall become the property of C in fee simple.' *The attempted executory interest in favor of C fails because of the rule against perpetuities.* The estate of the B Corporation is specifically subject to a special limitation. Upon the failure to use the real estate for the designated purpose the estate of the B Church Corporation ends and *A's possibility of reverter takes effect* in possession."

When the Boroughs of Tyrone and Bellefonte could no longer carry out the provisions of testator's gift, their determinable interest ceased and terminated. When the gift over to Sallie M. Hayes was invalidated because it violated the rule against perpetuities, the real and personal property which testator gave, devised and bequeathed first to the Boroughs and then to Sallie

M. Hayes, *revert back to the estate of the testator* by operation of law with the same force and effect as if there had been no gift over to testator's niece Sallie M. Hayes, and an intestacy results: Restatement, Property, §229, supra, Illustration 8, and §228, Illustration 2, §372; Gray, The Rule Against Perpetuities, §40.3; *Brown v. Independent Baptist Church,* 325 Mass. 645; *First Universalist Society v. Boland,*\* 155 Mass. 171; *Fletcher v. Ferrill,* 227 S.W. 2d 448 (Supreme Court Arkansas, 1950) ; *Bailey v. Eagle Mountain Telephone Co.,* 202 Tenn. 195; *Yarborough v. Yarborough,* 151 Tenn. 221; cf. also *Randall's Estate,* 341 Pa., supra; *Hanby v. Bailey,* 51 Pa. Superior Ct. 244.

In §372 of the Restatement, the law is thus stated: "a. . . . The exclusion of all interests of the conveyor and of his successors in interest (other than remainders or executory interests) from the destructive effect of the rule against perpetuities is a product of history. . . .

"b. Invalidity of other attempted interests—Effects. While reversions, possibilities of reverter and powers of termination are not themselves required to comply with the rule against perpetuities, the rule against perpetuities frequently has an indirect but substantial effect upon them. Thus whenever, in accordance with one of the rules stated in §§370 and 371, the limitation of either a remainder or an executory interest is invalid, this invalidation of an interest limited in favor of a person other than the conveyor, leaves more not disposed of by the conveyor, and hence causes a corresponding enlargement of the reversionary interest of the conveyor."

In *Brown v. Independent Baptist Church,* supra, a suit was brought in equity to determine the ownership

---

\* This case has been cited with approval in over 50 decisions by the appellate Courts in 26 states.

of land. Sarah Converse died seized of the land in 1849. In her will she specifically devised it to the Independent Baptist Church, "to be holden and enjoyed by them so long as they shall . . . continue a Church; and if the said Church shall be dissolved . . . then . . . this real estate shall go to my legatees hereinafter named. . . 'The rest and residue of my estate I give and bequeath to my legatees above named, saving and except therefrom the Independent Baptist Church. . . .' "

The Independent Baptist Church ceased to continue as a Church. The Court held (1) that the devise to the Church created a determinable fee, (2) that the specific executory devise over to "the legatees hereinafter named" was void for remoteness and violated the rule against perpetuities and (3) that the possibility of reverter passed under the residuary clause of testatrix's will to testatrix's residuary legatees (excluding the Church). The Court in an opinion by Qua Chief Justice said: ". . . the estate of the church in the land was a determinable fee. . . . First Universalist Society of North Adams v. Boland, 155 Mass. 171, 174, 29 N.E. 524, 15 L.R.A. 231; Institution for Savings in Roxbury and its Vicinity v. Roxbury Home for Aged Women, 244 Mass. 583, 585-586, 139 N.E. 301; Dyer v. Siano, 298 Mass. 537, 540, 11 N.E. 2d 451. The estate was a fee, since it might last forever, but it was not an absolute fee, since it might (and did) 'automatically expire upon the occurrence of a stated event.' Restatement: Property, §44. . . . the specific executory devise over to the persons 'hereinafter named' as legatees was void for remoteness. This conclusion seems to be required by Proprietors of Church in Brattle Square v. Grant, 3 Gray 142, 152, 155-156, 63 Am. Dec. 725; First Universalist Society of North Adams v. Boland, 155 Mass. 171, 173, 29 N.E. 524, 15 L.R.A. 231, and Institution for Savings in Roxbury and its Vicinity v. Roxbury Home for Aged Women, 244 Mass. 583, 587,

139 N.E. 301. See Restatement: Property, §44, illustration 20. The reason is stated to be that the determinable fee might not come to an end until long after any life or lives in being and twenty-one years, and in theory at least might never come to an end, and for an indefinite period no clear title to the entire estate could be given.

"Since the limitation over failed, it next becomes our duty to consider what became of the possibility of reverter which under our decisions remained after the failure of the limitation. First Universalist Society of North Adams v. Boland, 155 Mass. 171, 175, 29 N.E. 524, 15 L.R.A. 231; Institution for Savings in Roxbury and its Vicinity v. Roxbury Home for Aged Women, 244 Mass. 583, 587, 139 N.E. 301. Restatement: Property, §228, illustration 2, and Appendix to Volume II, at pages 35-36, including note 2. . . . the possibility of reverter passed under the residuary clause of the will to the same persons designated in the invalid executory devise. It is of no consequence that the persons designated in the two provisions were the same. The same result must be reached as if they were different.

"The single justice ruled that the residuary clause was void for remoteness, apparently for the same reason that rendered the executory devise void. With this we cannot agree, since we consider it settled that the rule against perpetuities does not apply to reversionary interests of this general type, including possibilities of reverter. Proprietors of the Church in Brattle Square v. Grant, 3 Gray, 142, 148, 63 Am. Dec. 725. French v. Old South Society in Boston, 106 Mass. 479, 488-489; Tobey v. Moore, 130 Mass. 448, 450. First Universalist Society of North Adams v. Boland, 155 Mass. 171, 175-176, 29 N.E. 524, 15 L.R.A. 231; Restatement: Property, §372, Tiffany, Real Property, 3d Ed., §404. See Gray, Rule Against Perpetuities, 4th Ed., §§41, 312, 313."

The Order of the Orphans' Court is reversed; the record is remanded to that Court to determine the heirs and next of kin of Edmund J. Pruner, and to hold such further proceedings and to enter such Orders and Decrees as may be advisable or necessary in accordance with this opinion. Costs to be paid out of the principal set apart for the Pruner Home.

DISSENTING OPINION BY MR. JUSTICE COHEN:

The parties, the lower courts and the opinion of the majority have approached this case under the erroneous assumption that the gift to the Boroughs of Tyrone and Bellefonte for the purpose of running a home for friendless children was something less than a gift of an absolute, unqualified fee. A *careful* examination of the codicils in their entirety reveals, however, that the gift to the niece, Sallie M. Hayes, was not some sort of "reversionary interest", but was in fact an alternative or substitutional gift to her with the condition that it take effect *only* in the event that the two boroughs, at the death of the testator, could not for any reason accept the gift as given. Because they could and did in fact accept the gift and its attendant responsibilities, the sole condition under which the niece was to take never occurred, and nothing further is contained in the will to cut down on the absolute fee held by the boroughs. The effect of this is twofold: First, the decree entered below must be vacated, because neither the heirs of Sallie M. Hayes nor the heirs of the testator have any interest in the property in question. Second, any suit to enforce the charitable trust, or to invoke the operation of the doctrine of *cy pres* must be brought by the Attorney General.

There can be no question but that the gift to Sallie M. Hayes was to take effect only if the boroughs re-

fused to take the gifts as given. The complete gift to the boroughs appears in the body of the will itself. It begins with language of general charitable intent, "For the purpose of benefiting humanity and caring for those in need I give . . ." and thereafter sets forth the purpose of the trust, describes the properties given, and outlines the restrictions as to the type of children the testator desired to be helped. Nowhere in this paragraph is there any language which even faintly suggests that less than a complete fee was given. The only language in derogation of the complete fee arises in the codicils which immediately follow the testator's signature to his will, almost as after-thoughts. In their entirety, the codicils provide:

"November 9, 1896

"*Should there be any reasons why* the Borough of Tyrone and the Borough of Bellefonte *cannot carry* out the provisions of this will then the property for said Home is *bequeathed* to my niece, Sallie M. Hayes.

(s) E. J. Pruner

"As I have stated on page 8th of this will should there *exist any reasons* why the Borough of Tyrone and the Borough of Bellefonte *cannot carry out the provisions of this will* in relation to the Home for Friendless Children then the property *that was bequeathed* to the Borough of Tyrone and the Borough of Bellefonte for the purpose of a Home *if such becomes invalidated from any cause* then said real estate *is bequeathed* to my niece, Sallie M. Hayes—of Bellefonte, Pa. and all legacies that may revert back to estate of E. J. Pruner are for the benefit of the Home for Friendless Children *provided said Borough of Tyrone and Borough of Bellefonte can carry out the provisions of the Will* and if they cannot then all legacies that revert back to estate of E. J. Pruner are to be vested in Sallie M. Hayes.

(s) E. J. Pruner

"The houses on Penna. Avenue, Tyrone, Pa. near paper mill I give in trust to Clara R. Moyer she to receive the rents and income from the same during her natural life, she keeping the same in repair and paying the taxes on the same and at the death of Clara R. Moyer the two houses to revert back to estate of E. J. Pruner and to go to the Home for Friendless Children *provided they* the Corporation of Tyrone and Bellefonte *can accept the same and carry out the provisions of this will & otherwise if they cannot* the two houses to go to my niece, Sallie M. Hayes of Bellefonte, Pa. (Emphasis supplied).

(s) E. J. Pruner

"Witness signature of E. J. Pruner:

(s) Mary Adair

R. D. Rose"

The italicized portions of the codicils make it clear that the only thing the testator was concerned about was whether the boroughs could responsibly accept the gift. The codicils speak of "reasons" why the boroughs "cannot carry out" the will and cannot "accept the [gift] and carry out the provisions of the will," and "provided said [boroughs] carry out the provisions of the will." This language speaks only to the *initial* ability of the boroughs to take and to perform its function as trustee; it is not at all directed to any concern of the testator with the purpose of the trust failing. In the face of this clear language there must be strong language indicating the testator was concerned with the failure of the purpose of the trust, so as to indicate he intended that even after the trust would be in operation, Sallie M. Hayes might still take; without strong and clear language I cannot see how the majority can say there is any reversionary interest here conditioned on the failure of the trust purpose.

The only possible argument for a reversionary interest stems from the phrase in the second paragraph

of the codicils which states, ". . . should there exist any reason why the [boroughs] cannot carry out the provisions of this will in relation to the Home for Friendless Children then the property that was bequeathed to the [boroughs] for the purpose of a Home if *such* becomes invalidated for any cause then said real estate is bequeathed absolutely to my niece, Sallie M. Hayes. . . ." The testator's unfortunate use of the word "such" makes it somewhat ambiguous as to what phrase "if such becomes invalidated from any cause" modifies. The majority must argue that this phrase modifies "the purpose of the home," but this construction is strained because in the ordinary sense one does not "invalidate" a purpose; in that sense a purpose would be frustrated or unaccomplished. When the language is considered in the general context of the paragraph it is more sensibly understood to mean that the gift to the Home as originally contemplated "if such becomes invalidated for any cause" is to be "bequeathed" (a term generally used to denote present giving and not future giving) in the alternative to my niece. The word "invalidated" contemplates some legal restriction on the two boroughs which might prevent them from initially receiving the gift.

Even if I were to accept the majority's construction of the will, I cannot agree with its conclusions. The appellant challenges the continuation of the Home in her capacity as an heir of Sallie M. Hayes, whom the appellant claims succeeds to the property of the Home upon failure of the trust. But by holding that the interest of Sallie M. Hayes is invalid because it violates the rule against perpetuities, the Majority has necessarily decided that the suit was improperly brought, since appellant in her capacity as an heir of Sallie M. Hayes has no interest whatsoever in the will. Thus the appeal should at this point have been dismissed for want of a proper plaintiff and the decree vacated.

There should have been no further inquiry into the case. If the heirs of the testator wish to come into court and claim their "reversionary interest," they may do so. But there is no need for us to order the court to go out and bring them in; nor is there any need to decide at this juncture whether the trust purpose has in fact failed. It is the function of the Attorney General as the guardian of the enforcement of charitable trusts to bring such a suit. It is not a function of this Court on its own motion.