## Miller Estate

*Paul Maloney,* for accountant.

*Walter Y. Anthony,* for legatees.

*James L. Price,* for Commonwealth.

KLEIN, P. J., November 19, 1964.—E. Marion Miller died on February 8, 1963, unmarried and without issue, leaving a will and codicils which were admitted to probate on February 20, 1963, when letters testamentary were granted . . .

By the sixth paragraph of her will, testatrix bequeathed certain pecuniary legacies in the following manner:

"SIXTH: In appreciation of their many kindnesses, I give and bequeath the sum of Five Thousand Dollars ($5000) to Mrs. Barton Cooke Hirst; the sum of Thirty Thousand Dollars ($30,000) to Miss Mary W. Stewart; the sum of Fifteen Thousand Dollars ($15,000) to Miss Eliza D. Olsen; the sum of Ten Thousand Dollars ($10,000) to Daniel Burt Harris; and the sum of Ten Thousand Dollars ($10,000) to Mr. and Mrs. Fred M. Davis, or the survivor, provided that each of such individual legatees or the survivor of the joint

legatees survives me by one year, the legacies of any not surviving me for such period to fall into and be added to the trust hereinafter provided for."

In the seventh paragraph of her will testatrix disposed of her residuary estate as follows:

"SEVENTH: All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind and wheresoever situate, I give, devise and bequeath as follows:

"(A) In recognition of the fact that for many years they have taken the place of the son and daughter that I never had, I give and bequeath one-fourth of three-fourths of the residue, namely three-sixteenths thereof, to John L. Graham, Jr. and Lillian T. Graham, his wife, or the survivor, absolutely.

"(B) With respect to nine-sixteenths of the residue, I give, devise and bequeath the same to Tradesmens Bank and Trust Company in trust to invest and reinvest the same and to pay over the net income therefrom to John L. Graham, Jr. and Lillian T. Graham, or the survivor of them, and, upon the death of the survivor of said life tenants, I direct that the Trustee shall transfer, pay over and convey the principal of the trust, together with any accumulated income, one-half thereof to the Berry Schools, Mt. Berry, Georgia, IN TRUST, the income to be used to provide scholarships to be known as the "Mr. and Mrs. George Bremer Miller Working Scholarships for worthy boys and girls"; and the other one-half thereof to the Board of Managers of the Emanuel G. and Anna L. Reyenthaler Memorial Home, the income to be used in and about the purposes of the Home, provided that for the purpose of increasing facilities thereof, if the Board of said Home deems it wise, the principal or portions thereof may be devoted to that purpose.

"(C) If both John L. Graham, Jr. and Lillian T. Graham should predecease me, the fraction of the resi-

due disposed of in subsection (A) of this paragraph shall be added to the trust created by subsection (B) hereof and shall thereupon pass directly to the charities as provided in subsection (B) hereof.

"(D) With respect to one-fourth of the residue, I give, devise and bequeath the same to my financial advisor, H. Townsend Bongardt, but should he predecease me, then I give, devise and bequeath one-half of this share to his wife, Gwendolyn K. Bongardt; and the remaining one-half thereof or, if both he and his wife have predeceased me, the whole thereof shall be added to the trust created in subsection (B) of this paragraph."

Eliza D. Olsen, one of the legatees named in the sixth paragraph as legatee of $15,000, died on November 4, 1956, in the lifetime of decedent. The accountant has raised the question as to whether this legacy should be added to the trust of nine-sixteenths of the residuary estate or to the entire residuary estate, generally.

In the audit notice sent to the parties in interest pursuant to Philadelphia O. C. Rule 63.1(c), the accountant stated:

"It is the opinion of the accountant that this provision was intended to apply only to the legatees who survived the decedent. Since Eliza D. Olsen's legacy lapsed before the death of the decedent, it is the position of the accountant that the residue is enhanced generally thereby."

Mr. Anthony, counsel for the Berry Schools and the Regenthaler Memorial Home, residuary legatees, vigorously challenges the accountant's interpretation of the disputed section. He contends that this legacy should be added to the trust of the nine-sixteenths of the residuary estate for the benefit of the two charities. The parties who would benefit if we adopted the accountant's view have indicated that they do not wish to contest the matter and are willing to accept the

court's disposition of the question upon the statement of counsel for the accountant.

The Wills Act of 1947 provides:

"SECTION 14. RULES OF INTERPRETATION. —In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

". . .

"(9) LAPSED AND VOID DEVISES AND LEGACIES; SHARES NOT IN RESIDUE. A devise or bequest not being part of the residuary estate which shall fail or be void because the beneficiary fails to survive the testator or because it is contrary to law or otherwise incapable of taking effect or which has been revoked by the testator or is undisposed of or is released or disclaimed by the beneficiary, if it shall not pass to the issue of the beneficiary under the provisions of clause (8) hereof, and if the disposition thereof shall not be otherwise expressly provided for by law, shall be included in the residuary devise or bequest, if any, contained in the will."

In Burleigh Estate, 405 Pa. 373 (1961), Mr. Chief Justice Bell laid down what might be called "ground rules" which must be followed when a testamentary writing is being construed. He said, at page 376:

"The pertinent principles of law are well settled; their application is sometimes difficult.

"It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason un-

certain: Dinkey Estate, 403 Pa. 179, 168 A.2d 337; Pruner Estate, 400 Pa. 629, 162 A.2d 626; Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197."

The following statement, found in 4 Partridge-Remick Pennsylvania Orphans' Court Practice, §27.07, page 75, is also helpful:

"The rules of interpretation supplied by Section 14 are to be applied 'In the absence of a contrary intent appearing' in the will. The intention of a testator is the pole star in the construction and interpretation of every will. The intention must be gathered from the whole will or from its four corners. The intent of the testator must prevail and the intent must be ascertained from what testator understood to be the legal meaning of the language he used. When the intention is clear, it may not be disregarded on the basis of a literal interpretation, or by the court's subjective deductions as to what testator might have meant or perhaps did mean but did not say, but the scope of the inquiry is limited to the meaning of what testator said."

The testatrix was a widow, without children. A careful reading of her will and codicils "from its four corners" reveals that the Berry Schools and the Regenthaler Memorial Home, the two charities designated in subsection B of the seventh paragraph were the principal objects of her beneficence. In several places in her will she provided that legacies to designated individuals should be added to the trust for the charities if they failed to survive her. At no place does she indicate a desire to increase the corpus of the residuary estate generally.

In our opinion, the meaning of testatrix's language is clear and subject to only one interpretation, namely, that the testratix intended that if Eliza D. Olsen failed to survive her for a period of one year, whether her

death occurred in the life-time of decedent, or thereafter, within the designated period of one year from her death, her legacy of $15,000 was "to fall into and be added to the trust hereinafter provided for", and not to the residuary estate generally. The only trust so created was in subsection B of the seventh paragraph. Since Eliza D. Olsen predeceased decedent, it is obvious that she did not survive her for a year, which was the condition upon which the gift was predicated, and upon which the gift over to "the trust" became operative.

The legacy of $15,000 to Eliza D. Olsen will therefore be awarded to the trustees for the purposes of the trust created in subsection B of the seventh paragraph . . .

And now, November 19, 1964, the account is confirmed nisi.