**Colonna Estate**

Before Klein, A.J., Saylor, Shoyer, Pawelec and Silverstein, JJ.

*Joseph P. Briglia* and *Dunstan McNichol,* for exceptants.

*Paul J. Donnelly,* guardian ad litem, contra.

SHOYER, J., September 18, 1973.—May a testamentary trust for a minor daughter and her mother which provides for distribution of the principal at termination in the proportions of two-thirds to the daughter and one-third to the mother (with a similar division of income) but which authorizes invasion of principal "for . . . either beneficiary without regard to maintaining equality among them" be separated into two trusts solely for the protection of the minor and against the protests of the mother? Exceptions to the order of the auditing judge filed by the mother, which are supported by the executors-trustees, present us with this single issue.

We take our facts from the history of the case as stated in the brief of the attorney for the mother, since this statement is not disputed by the guardian-trustee ad litem.

Angelo Colonna, the testator, died December 25, 1970. At the time of his death he was and had been for several years separated from his wife. He had established a meretricious relationship with Margaret F. McClaskey, which resulted in the birth of Victoria Maria Colonna, whom he acknowledged as his daughter. Prior to his death, testator supported both the mother and the daughter. He left surviving him, in addition to exceptant and their daughter, three other children, a widow, and several grandchildren. His will, dated November 30, 1970, gave his widow one-third of his estate and provided for the other above-named relatives as well as the widows of his deceased

son and brother. Testator specifically devised the premises which he had occupied as his home to Victoria, said property to be held for her in trust until she reached the age of 21 years. (By deed of trust dated June 29, 1956, Colonna had previously conveyed premises at 5416 Sycamore Street, Philadelphia, to Victoria, to be held in trust until she should reach the age of 21.) He then (item "E") left one-third of his residuary estate in trust for Victoria and Margaret F. McClaskey, to be held in trust with the income payable 65 percent to the daughter and 35 percent to her mother. The trust is to terminate upon the death of the daughter, or when she attains the age of 25 years, whichever is first to occur. The principal then to be divided two-thirds to the daughter and one-third to her mother, Margaret F. McClaskey. This item "E" further provides that "My trustees shall have the power to pay to either of them such of the principal of the trust as my trustees consider advisable for support, education and welfare of either beneficiary without regard to maintaining equality among them."

The will continues:

"F. *Emergency Clause*. My trustees are authorized, in their absolute discretion, to use principal for maintenance and support, for educational requirements and health, including but not limited to medical and surgical expenses, of any income beneficiary or any issue of mine; provided, however, that in determining whether to use principal pursuant hereto, my trustees shall consider the funds available to such beneficiary or issue from other sources. So far as, in the discretion of my trustees, it is practical to do so, payments so made shall be charged against the share of principal represented by the individual benefited thereby, either at the time of payment or any subsequent division or distribution of the trust."

At the audit it was established that, since the death of the testator, Margaret McClaskey has suffered a recurrence of a pre-existing brain tumor which resulted in extensive hospital, surgical and medical bills, approximating $21,000. The total amount of medical bills exceeds Margaret's one-third share of the residuary trust. When the account was filed, the executors indicated that $11,996 had been advanced from the fund allocable to the trust, solely on behalf of Margaret's medical bills. The total principal of this trust is approximately $60,000.

The report of the guardian ad litem indicated his apprehension that the trustees would invade the principal of the trust established for Victoria and Margaret to such an extent that the residuary share of Victoria, then a minor, would be diminished below the two-thirds share of principal apportioned to her by the will.

The learned auditing judge construed the authority of the trustees to invade principal to pay the medical and surgical expenses for either Mrs. McClaskey or her daughter to be limited to the share of principal which testator allotted to each beneficiary. The adjudication further provided: "[T]o protect the interest of the minor, Victoria Maria Colonna, the trustees are directed to divide the fund into separate trusts in the proportions set forth in the will, 65% for the benefit of Victoria, and 35% for the benefit of her mother, Margaret F. McClaskey."

We have read the will several times. We cannot discover any intention on the part of the testator to set up two trusts. It is true that item E is headed "Trust for Daughter," and the paragraph then begins, "The trusts created for the benefit of my daughter, Victoria Maria Colonna and Margaret F. McClaskey shall be held by my trustees, etc., etc." The ad litem makes much of the failure of testator to include the mother in the heading

of this paragraph. Since the daughter is named first and is given double the mother's share in both income and principal, we believe that it would be an error to place any undue emphasis or importance on the failure of testator to include a reference to the mother in the title of this paragraph. Nowhere else in item E is the plural of trust used, but only the singular. We deem it significant that when testator comes to provide for distribution on termination he says, "This trust shall terminate and my trustees shall divide the principal." He speaks of one trust and one principal only, and provides for its division into "three equal parts," with two parts, or two-thirds, going to Victoria.

Furthermore, in the residuary item "D," setting up the trust by first dividing the entire residue into nine equal parts, testator directed "(a) Three of the said parts to my trustees in trust for my daughter, Victoria Maria Colonna and for Margaret F. McClaskey to have and to hold" etc., etc. It is clear that these three parts were to be placed in *one* trust, not *two*. If more than one trust were intended, testator would have had to specify the division into each, and this he has not done. Instead, he provides for division only upon termination, not before.

Times without number our Supreme Court has said that in the construction of wills "It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain: Dinkey Estate, 403 Pa. 179,

168 A. 2d 337; Pruner Estate, 400 Pa. 629, 162 A. 2d 626; Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197": Burleigh Estate, 405 Pa. 373, 376 (1961).

The learned auditing judge did not claim that he found in the will an intention to create two trusts but simply adopted this judicial device to preclude the very likely possibility that Victoria's two-thirds share of principal would be invaded to pay her mother's large medical expenses. In so doing, we believe that he committed error.

Case law in Pennsylvania has always prohibited the separation of one trust into two or more without testator's authority or direction: Laucks Estate, 358 Pa. 369 (1948); Lockhart's Estate, 306 Pa. 394 (1932); and Estate of Geo. P. De Silver, 142 Pa. 74, 78 (1891), all support this rule, "since it cannot be said that a share of income from the entire estate is not more valuable than the income from a proportional share of the principal": Laucks Estate, supra, at page 380. The legislative modification of this common-law rule which was first expressed in section 991 of the Fiduciary Act of April 18, 1949, P. L. 512, 20 PS §320.991, now section 7191 of the Probate, Estates and Fiduciaries Code of June 30, 1972, Act no. 104, permits judicial separation of a single trust, but only "with the consent of all parties in interest." Since Margaret F. McClaskey objects, the action of the learned auditing judge finds no support in this statute.

From our reading of the will, we are impressed with the very broad discretion which testator has placed in his executors-trustees. While this trust for Victoria and her mother is the only one expressly set up, there are contingent trusts for minors and any beneficiary who "in the opinion of my executors and trustees is incapable because of physical or mental incapacity of properly

using any payments of principal or income to which he is entitled, my trustees may use any payments to which the beneficiary shall be entitled for the maintenance, support, health and education of the beneficiary. Any amounts not required may be held by my executors or trustees and invested in accordance with the provisions of this trust covering investments by my executors or trustees and any principal and accumulated income shall be paid over to the beneficiary upon the termination of his minority or incapacity, or in the event of his death, to his personal representative."

Furthermore, the trustees have "absolute discretion" as to termination. Thus, the will provides under 2. ADMINISTRATIVE PROVISIONS. E. Trustee Termination:

"If at any time my trustees, in their absolute discretion, should determine that any trust established hereunder or any share hereunder, is impractical to administer, my trustees may, in full discharge of their duties, without formal court accounting, make distribution of the principal thereof to the person then entitled to the income. Should any such person be a minor or in the opinion of my trustees be mentally or physically incapacitated, my trustees may pay the share to the parent or guardian of the beneficiary, or to any person taking care of the beneficiary, or in the case of the minor, may deposit the share in a savings account made payable to the minor upon his attaining majority."

The provisions above quoted throw light on the extent of the testamentary powers vested in the trustees in the discharge of their responsibilities to Victoria and her mother. The "power" to pay out principal "as my trustees consider advisable for support . . . and welfare of either beneficiary without regard to maintaining equality among them" removes any limitations to re-

strict invasion of corpus to the two-thirds—one-third ratio. We construe "equality" as "commensuration" or corresponding in amount. In looking ahead to the termination of the trust, it does not seem that the trustees must refrain from invading Victoria's share of principal for her mother's medical expenses. "Emergency Clause F" is not aimed directly at the trust for Victoria and her mother but is supplementary since it pertains to "any income beneficiary or any issue of mine." The trustees are not *adjured* to charge invasions of corpus against the share of the beneficiary respectively benefited, but instructed only "[s]o far as, in the discretion of my trustees, it is practical to do so." We regard this language as precatory for the reason that, what is "practical" in the "discretion of my trustees" will permit only minimal judicial supervision. As of now, our ruling on this clause pertains only to the division of income, because the trust continues.

The guardian ad litem vigorously contends that any doubt as to testator's intentions should be resolved in favor of Victoria, a lawful intestate heir, rather than her mother to whom testator was never wedded, and in this contention he is supported by Estate of Sophia Windt, Dec'd., 110 Pa. Superior Ct. 124 (1933). We cannot ignore in our search for testamentary intent, the fact that testator amply supported Margaret F. McClaskey in his lifetime. Mr. McNichol, who drafted this carefully drawn will, assures us that testator was well aware of Margaret McClaskey's first serious brain operation. Whether or not testator anticipated a recurrence is a matter of speculation, but in preparing to record his last wishes, he brought with him this knowledge of her past medical history. Victoria was 15½ years of age when he executed his will less than one month prior to his death. The trust provided for her continuing education but also for her mother's support,

welfare and possible medical and surgical expenses. The needs of one beneficiary as against the other were to be weighed by the discretion of his trustees, regardless of the greater property rights initially vested in his daughter. Upon attainment of her majority, testator undoubtedly knew that Victoria would become legally responsible for her mother's support under Pennsylvania law. Judicial protection of the rights of the minor should not be extended to a preference as against the proper claims of her mother as a beneficiary under the will.

Minors and orphans and their property rights are the special concern of orphans' courts: Pote's App., 106 Pa. 574, 580 (1884); Probate, Estates and Fiduciaries Code, §5112. To protect Victoria and the other minors, as well as unborn contingent beneficiaries, Paul J. Donnelly, Esq., was appointed guardian ad litem. At the audit, Mr. Donnelly successfully advanced the interests of Victoria by persuading the auditing judge to separate the trust. Thereafter, on April 17, 1973, Victoria became 18 years of age. Under various acts of the legislature recently enacted, Victoria is no longer a minor. Prior to arguing against the exceptions before our court en banc, Mr. Donnelly explained the situation to Victoria and she has approved in writing his representation of her in opposing the claims of her mother. She was thus acting in her sui juris capacity and is personally responsible for Mr. Donnelly's compensation. We find no conflict in Mr. Donnelly's position, since the remote contingent interests of his other wards would be identical with the interest of Victoria in the event of her death without issue before age 25.

For the reasons set forth above, the exceptions of Margaret F. McClaskey are sustained. The direction by the learned auditing judge to separate the fund into

two trusts is countermanded, and the fund is awarded to the trustees to be maintained as one trust for the uses and purposes of the will in the light of the views expressed herein.