## Hoffman Estate

*Arnold, Bricker, Beyer & Barnes,* for exceptant.
*Richard M. Martin* and *Robert A. Longo,* contra.

APPEL, ADM. J., June 27, 1974.—On February 7, 1974, we filed our adjudication to which exceptions have been filed by Mary J. George. We therein stated the following:

"Mazie E. Hoffman died January 31, 1973, having disposed of her estate by will, the pertinent provisions of which are the following:

" 'ITEM: In the event my husband, Charles C. Hoffman, should not survive me, I give and bequeath to The Manheim National Bank, in trust, for the use of Chester L. Hoffman as hereinafter provided, the sum of Two Thousand Dollars ($2,000.00).

" 'ITEM: All the rest, residue and remainder of my estate I direct shall be divided equally among my five living children as follows:

" '(a) One-fifth thereof I give, devise and bequeath to The Manheim National Bank as Trustee, together with the Two Thousand Dollar ($2,000.00) bequest heretofore set forth, for the use of my son, Chester L. Hoffman, during his lifetime. The said The Manheim

National Bank, as Trustee, shall pay to my son, Chester L. Hoffman, or to those persons or institutions who may be charged with his care during his lifetime, all the net income and such sums of principal that may in the sole discretion of The Manheim National Bank, as Trustee, be necessary for his comfortable care, maintenance and support. Said payments of principal and income are to be made without order of Court and without liability to the Trustee. Upon the death of my son, Chester L. Hoffman, I direct that The Manheim National Bank shall pay to the children of my daughters, Mildred A. Alleman and Joan W. Netwig, such sums of principal and income that may remain unexpended at the time of my son's death, in equal shares or parts, per stirpes.

" '(b) One-fifth thereof I give, devise and bequeath to my son, Donald W. Hoffman, absolutely.

" '(c) One-fifth thereof I give, devise and bequeath to my daughter, Mary J. George, absolutely.

" '(d) One-fifth thereof I give, devise and bequeath to my daughter, Mildred A. Alleman, absolutely.

" '(e) One-fifth thereof I give, devise and bequeath to my daughter, Joan W. Netwig, absolutely.'

"The testatrix was not survived by a spouse. She was survived by each of the named legatees except Chester L. Hoffman who died September 10, 1972. Joan W. Netwig is correctly known as Joan W. Nentwig. The children of Mildred A. Alleman are: Marilyn K. Hartranft, Marlin J. Alleman and Linda K. Alleman, born February 14, 1961. The children of Joan W. Nentwig are: Joni A. Nentwig, born July 21, 1957; Nancy Jane Nentwig, born July 26, 1961; and Pamela Sue Nentwig, born June 18, 1970.

"The testatrix provided for a life estate in the sum of $2,000.00 and in one-fifth of her estate for her son Chester and upon his death the children of two named

daughters to receive such sums of principal and income that may remain unexpended at the time of his death. Chester predeceased the testatrix whereby the life estate never came into being. The law is clearly stated in Volume 5 of Hunter Pennsylvania Orphans' Court in its discussion of remainders at page 193, 1(d) as follows:

" 'Where the life tenant dies in testator's lifetime, or other specified event occurs upon which the remainder is to become effective, the remainder is accelerated to the date of testator's death.' [Cases cited]

"The children of Mildred A. Alleman and of Joan W. Nentwig were given the remainder interest of the trust upon the termination of the life estate. That the life estate never came into enjoyment because of Chester's death prior to the death of the testatrix does not affect the interest passing to the remaindermen except to accelerate it to the date of testator's death as above set forth."

The exceptant takes the position that since Chester died without issue prior to the death of testatrix, the "legacy of $2,000.00 to Chester L. Hoffman should have lapsed, and the bequest to Chester L. Hoffman of one-fifth of the residue should have failed because it was conditioned on Chester L. Hoffman's being a living child of Mazie E. Hoffman at the time of her death."

The exceptions are predicated on the contention that the will requires that a child be living at the death of testatrix for the gift to a child to be effective. Although the introductory provision pertaining to the residue directs that it be divided among "my five living children," we do not believe that this compels the conclusion that the child be living at the death of testatrix.

We first note that although the legacy of $2,000 is for the use of Chester L. Hoffman, the gift is to The Manheim National Bank in trust for him during his lifetme and at his death as therein provided. The "living child" clause of the residuary disposition is not a part of the $2,000 legacy, therefore, it must be concluded that the cash legacy is in no way affected by the clause on which the exceptant bases her contention.

It has been suggested that the direction of testatrix that her estate should be divided among "living children" means children living at her death because of section 2514(1) of the Probate, Estates and Fiduciaries Code, 20 Pa. S. §2514(1), which provides as follows:

"In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

"(1) Wills construed as if executed immediately before death. Every will shall be construed, with reference to the testator's real and personal estate, to speak and take effect as if it had been executed immediately before the death of the testator."

This clause is the same as section 14(1) of the Wills Act of 1947, which, according to the commission's comment, is identical with section 9 of the 1917 Act, 20 PS §221, which was section 1 of the Act of June 4, 1879, P. L. 88, in Jones' Est. 211 Pa. 364, the court discussed the earlier act as follows, at page 383:

"Nor is there anything in the Act of June 4, 1879, P. L. 88, to the contrary. Under the requirements of that act, it is 'with reference to any real or personal estate embraced in it' that every will shall speak as of the testator's death. In Robeno v. Marlatt, 136 Pa. 35, the court below said, on page 37: 'It is claimed, however, that the act of June 4, 1879, bars their (afterborn children) right. This act has received judicial

construction, the results of which are that as to the condition of the donees the will speaks as of the date; as to the subjects of the testamentary disposition, the will is construed as of the death; as to the objects, that is, the persons who are to take under it, and their condition, the will speaks as of its date; as to the testator's condition, it is to be considered as of its date. The act is restricted in its effect to the real and personal property passing under it.' "

In Solms' Est., 253 Pa. 293, the Jones opinion was cited for the principle that, "As to identity of the beneficiary a will speaks as of its date." In the Estate of Cecelia H. Ellmaker, 26 Lanc. 81, President Judge Smith quoted extensively from Jarman on Wills as follows:

" ' "As a general rule, whenever a testator refers to an actually existing state of things, his language is referential to the date of the will, not to his death. Such, it is clear, is the construction of the word 'now' or any other expressions pointing at present time. Thus a devise to the descendants now living of A. has been held to comprise the descendants living at the date of the will, exclusive of such as came into existence between that period and the death of the testator." ' I Jarman on Wills, p. 318.

" ' The author cites a number of English cases in support of this statement, and goes on to state that devise to the heir male of the body of A. "now living" refers to the heir apparent of "A" living at the date of the will. In the American notes cited, a legacy "to my present attending physician" was held to refer to the time of making the will. Mr. Jarman then goes on to take up the effect of the statute of I Victoria, 26, and shows that the statute takes effect only upon the subject or thing which passes under the bequeath or devise. He goes on to say:

" ' "The enactment does not in any manner inter-

fere with the construction in regard to the objects of the gift, as to whom, therefore, the doctrines discussed in the present chapter respecting the period at which the will speaks or at which the objects are to be ascertained remain in full force, even under a will the period of whose execution brings it within the new law." ' I Jarman, page 337."

The court then concluded with the following:

" 'This rule of law that, as to the identity of the person who takes under it, the will speaks from the date of its execution, is a fixed rule of construction which is binding upon the Courts, and must be followed without regard to any alleged inequalities or disappointment on the part of those who might otherwise be included in its terms. All of those cases which seem to imply a different rule will be found on examination to refer to estates where the thing bequeathed and not the persons to receive the legacy are in question.' "

At oral argument, counsel for the exceptant informed the court that testatrix had a child who had died prior to the date of the execution of the will. This, then, in our opinion, completely explains that testatrix, although she identified each of her then living children, further was differentiating those then living from the one who had died previously. We, therefore, conclude that, in this instance, the language is used with reference to identity of the beneficiary and not with reference to real and personal estate whereby it "speaks as of its date."

Counsel has pointed out the principles of law to be applied in will interpretation as set forth in Burleigh Est., 405 Pa. 373, page 376, as follows:

"It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and

(b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain: Dinkey Estate, 403 Pa. 179, 168 A. 2d 337; Pruner Estate, 400 Pa. 629, 162 A. 2d 626; Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197."

For the moment, we completely disregard the legacy of $2,000 and consider only the five shares of residue. Testatrix disposed of one of those shares in trust for life with remainder over. Had Chester L. Hoffman been living at the death of testatrix, there could be no argument about the disposition of the fifth. Because he was not then living, the exceptant argues that under the language of the will the legacy of a fifth has lapsed and that testatrix in this situation intended that there be only four shares.

The words "among my five living children" apply not only to the share bequeathed in trust but also to each of the shares given to each of the other four children. If it be concluded that "living" refers to date of death with respect to the trust legacy, then "living" would also have to be applied as of date of death to the other legacies. If it be concluded that the remainder interest lapsed because the life tenant predeceased, then it would have to be concluded that a legacy to one of the other children would have lapsed had a child died before testatrix. We are unable to conclude that testatrix' scheme of distribution effectively negated the lapse statute by which the share of a child would be transmitted to a grandchild if a child should have predeceased testatrix. Had Mary J. George predeceased testatrix, leaving children to survive, the "living child" provision of the will

would not, in our opinion, cause the gift to lapse to the detriment of her children. By the same token, the gift as to which exceptions have been filed does not lapse because of the prior death.

For the reasons stated, we conclude that the adjudication filed February 7, 1974, correctly directs the distribution to be made in accordance with the will of decedent and we, therefore, enter the following

## ORDER

And now, June 27, 1974, the exceptions filed by Mary J. George are hereby dismissed.