## Randall's Estate.

502

Argued January 29, 1941.  Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER,
JJ.

504

[redacted]

*I. B. Rutherford,* of *Rutherford & Rutherford,* for appellants.

*John W. Kephart,* with him *Milford J. Meyer, Louis A. Fine* and *C. E. Bodie,* for appellees.

OPINION BY MR. JUSTICE DREW, March 25, 1941:

The question presented * by this appeal concerns the construction of the will and codicil of John Randall, as well as a certain written agreement entered into by him during his lifetime with the Honesdale National Bank, in order to ascertain whether the trust created by these instruments has terminated because of a breach of an express condition subsequent, or failure of the paramount purpose which decedent had in view, and the property, therefore, permitted to revert to the appellees, as next of kin of the testator. The learned Orphans' Court of Wayne County, after hearing upon petition, citation and answer, entered its preliminary decree determining that the entire trust had failed and ordering a final accounting by the trustees. From the final decree dismissing their exceptions and affirming the preliminary decree, the trustees have appealed.

The testator, John Randall, died March 29, 1922, and by his will dated March 17, 1921, provided, among other things not pertinent to this issue, as follows:

"Fifth:—That certain tract of land known as the

---

\* Counsel for the parties stipulated at the hearing before the court below as follows: "We stipulate that the present issue in the case is whether or not the trust or any part of the trust, the real estate, the general fund or the fund in the National Bank should be terminated and distributed among the heirs of John Randall or whether it should be continued as a general charitable trust either in its present form or in some other form."

Jerico Farm, consisting of about one hundred seventy-five acres (175) more or less, situate in the Township of Buckingham, County of Wayne, State of Pennsylvania, . . . I give in trust to the said Township of Buckingham, its successors and assigns to be used and occupied as a home for the poor of the said Township of Buckingham to be known as the 'John Randall Memorial Home'. It shall be managed and controlled by three trustees or a majority of them, composed of two supervisors of the poor of the Township and my wife Fannie Randall, who shall serve until her decease and after her death the president of the school board of Buckingham Township and his successor or successors in office shall be her successor said board to be known as 'The Board of Trustees of the John Randall Home'.

"Sixth:—I direct that all revenue derived from the farm of the said Home and the trust herein created shall be for the use and benefit and purpose of said Home but the principal shall remain intact and shall not be disturbed, only income therefrom shall be used for the benefit of said trust and upon the failure to use the said land for the said Home or should the purpose of this trust fail for any reason whatsoever, I do hereby direct that the said property and trust created for said purpose shall revert to my estate and shall go to my nearest next of kin then living.

"Seventh:—For the purpose of carrying out the purpose of said trust and for the maintenance of said Home, I hereby direct my executors hereinafter named and do hereby give them authority and power to convert all my real and personal property of which I may die possessed of and not otherwise herein disposed of into cash or other good and sufficient securities at any time as in their judgment shall seem best. . . .

"Eighth:—I do hereby direct that the proceeds of said sale or sales shall be invested for the benefit of said trust and for the use and benefit of the said John Randall Memorial Home, or for the benefit of the poor

of Buckingham Township only, it being my intention that the poor of said Township who cannot become inmates of said Home shall be benefited by said trust, all lands, securities or property whatever acquired shall be used for the purpose and benefit of said trust.

"Ninth:—The buildings now on said farm must be improved and kept in repair if need be and if necessary new buildings can be erected for the comfortable habitation and maintenance of the inmates."

On October 22, 1921, Randall added a codicil to his will, the pertinent portion of which is as follows: "I, John Randall, . . . hereby instruct my executor to deposit in the Honesdale National Bank an amount sufficient to create a fund of $15,000.00, one-quarter of the income on same to be added to the principal quarterly and three-quarters of the income to be paid quarterly to the Officers of The John Randall Memorial Home; this fund to be irrevocable."

On October 27, 1921, Randall entered into an agreement with the Honesdale National Bank, providing, inter alia, as follows: "That the Party of the First Part, Mr. John Randall, . . . desires to deposit in the Honesdale National Bank, Fifteen Thousand ($15,000.00) Dollars, subject to his control during his natural lifetime, but upon his demise the fund to be irrevocable, and the income amounting to $600.00 per year to be paid by the Honesdale National Bank as follows: One quarter of the income, viz., $150.00 to be added each year to the principal of the fund, and three quarters of the income, viz., $450.00 to be paid in quarterly installments to the Officers of the John Randall Memorial Home, . . . and their Successors in Office."

The appellees, nieces and nephews of Randall, contend that the trust has terminated by non-user and noncompliance with the terms of the will and codicil, as well as the agreement inter vivos, and that under paragraph Sixth of the will that the trust property should revert to the estate of the testator. The appellants, the trus-

tees, strenuously argue that the trust has not terminated, but has been executed in its present manner by virtue of necessity; and furthermore, that the trust is a general one for the benefit of the poor of the Township of Buckingham and should be maintained either as at present administered or under some modified manner devised by the court or by an auditor appointed by it.

The learned court below, after considering the provisions of the will, codicil and agreement and examining the testimony adduced at the hearing in regard to the manner in which the trust has been administered since Randall's death, found as a fact that the directions for the use of the real estate had not been complied with and that under such circumstances the maintenance of a fund for its support as set forth in the will, codicil and inter vivos agreement was thus rendered but a nullity, and for that reason the trust in its entirety has ceased and determined and should, therefore, revert to the testator's estate. With this conclusion we are in accord.

While we realize that to sustain the contention of appellees would work a forfeiture, which, in really doubtful cases, the courts will not do: *Jordan's Estate,* 310 Pa. 401, 410, nevertheless we are firmly convinced that, under the circumstances of the instant case, the learned court below properly found that these appellees have met the heavy burden cast upon them. The findings of that court are amply supported by the evidence and are, therefore, binding on us: *Patterson's Estate,* 333 Pa. 92, 93. Scrutiny of the record reveals that John Randall never occupied the farm and buildings dedicated to the trust, and when he died the buildings on the premises were unimproved and unfurnished. The trustees, although in possession of the property from the time of the acceptance of the trust in 1923 until the farm house was destroyed by fire in 1940 (it never having since been replaced), have not improved, repaired or furnished the building so as to make it available or adapta-

ble as a Home of the type which Randall had in view for the maintenance of the poor. It has never been specifically identified by signs or otherwise as the "John Randall Memorial Home", nor has the income from the fund been applied to the maintenance of the premises. On the contrary, the property has been rented by the trustees to various tenants almost continuously under an arrangement whereby such tenants agreed to board any indigent person sent to them by the trustees, but in these seventeen years only one person applied for and received such accommodation. The trustees lent money from the trust fund to several of the tenants in order to stock the farm, all of which loans having since been repaid, and have made some repairs to the property for the benefit of the tenants. The Township of Buckingham is strictly a rural community with a population of but 590 people; and the trustees, in their answer, admit that, for this reason, it is impractical to establish a Home for the poor as directed by Randall.

In ascertaining whether the trust here involved was intended to be a specific or general one for charity, we must seek the testator's intention from an examination of the will and its codicil as one instrument: *Dutton's Estate*, 301 Pa. 94, 97. In so doing, however, we must also take into consideration the agreement inter vivos with the Honesdale National Bank, since by its provisions it is clearly intended to be incidental to and dependent upon the creation of the trust set up in the will. Looking thus to the four corners of these instruments, it seems perfectly obvious that the predominating intention of Randall was to establish a Home for the poor of the township who sought its shelter, with the further benevolent purpose of perpetuating his own memory. That this was the intent is clear from an examination of all three writings, without any necessity whatever of resorting to speculation. We search in vain for the slightest indication of a general charitable intent. There is absolutely nothing to indicate that testator, in his

will, codicil or inter vivos agreement, intended to make any provision for the poor generally of the township, unless they could be cared for in the Home, or could not secure admittance therein because of overcrowding or some other such reason. The establishment of the Home was the paramount and primary consideration in the thought of Randall, and a general provision for the poor of Buckingham Township would indeed appear to be quite beyond his contemplation.

Appellants rely on the isolated expression ". . . or for the benefit of the poor of Buckingham Township only . . .", used by testator in the Eighth paragraph of his will, as the primary support for their contention that decedent contemplated aid or benefit to the poor generally of the community. We find no merit in such argument, for a careful study of the entire paragraph from which this excerpt is taken makes it clearly apparent that the poor for whose benefit the trust was intended to be created are those "who cannot become inmates of said Home." Obviously this latter qualification cannot be ignored since it presupposes the continued existence of the "John Randall Memorial Home". The establishment and maintenance of the Home was the main purpose of the trust—the other portion as to those who could not secure accommodation therein was merely ancillary to this principal object. Furthermore, the phraseology contained in the entire will, the codicil and the agreement fortifies this conclusion.

From the foregoing it can readily be observed that the property was placed in trust for a specific use— the establishment of the "John Randall Memorial Home"—and that this was a condition subsequent upon which the trust was to continue cannot properly be questioned. It is well settled that whether a condition shall be construed as precedent or subsequent depends upon the testator's intention as expressed in his will; and the fact that the time of the performance is indefinite leads to the conclusion that the condition

was intended to be subsequent: *Thompson's Estate,*
304 Pa. 349, 353. A condition subsequent has been de-
fined to be one which operates upon estates already
created and vested, and renders them liable to be de-
feated: *Gypsy Oil Co. v. Escoe,* 126 Okla. 3, 258 P.
906, 908. It is aptly stated, in Scott on Trusts, Vol.
3, Par. 401.2: "Where property is conveyed or devised
upon a charitable trust and it is provided that if the
property is not used in the manner directed it shall
revert to the settlor or his heirs, the trust is subject to
a condition subsequent. In such a case if the condition
is broken, the settlor or his heirs are entitled to the
property."

In the instant case, the trust conditionally vested
upon its acceptance by the trustees, who were bound
by the condition provided by the testator. It was, how-
ever, defeated when the trustees, as found by the learned
court below, failed to establish the Home, for the will
expressly provides ". . . upon the failure to use the
said land for the said Home or should the purpose of
this trust fail for any reason whatsoever, I do hereby
direct that the said property and trust created for said
purpose shall revert to my estate and shall go to my
nearest next of kin then living." Relative to such provi-
sions, we said, in *Penna. Horticultural Society v. Craig,*
240 Pa. 137, 148: "These conditions were intended to
safeguard the benefaction of the donor and we are not
advised of any declared policy or rule of law making
them illegal. The donor did nothing but what she had
the legal right to do and *those who accepted her gift
are bound by the conditions imposed."* (Italics added.)

Although admitted by both appellants and appellees,
nevertheless, it might be well to here state that the doc-
trine of cy pres has no application in the instant case,
since testator expressly provided for the reverter upon
the failure of the trustees to use the land as a Home:
*Seitz v. Seitz,* 1 Mona. 626. In *Jordan's Estate,* supra,

(p. 405), it was said: "There is no room here for the application of that doctrine [cy pres]; testator having declared what shall be done with the fund in case the Academy is excluded from participation in it, and there being no law or public policy antagonizing his disposition of it. We have to award it as he directed, since, under such circumstances, he had an inalienable right to do as he pleased with his own."

Particularly apropos to the facts of the instant case is *Bowden v. Brown,* 200 Mass. 269, 86 N. E. 351, where decedent, after giving certain legacies in her will, provided for the remainder by language which ends as follows: "Be given to the town of Marblehead toward the erection of a building that should be for the sick and poor, those without homes. I leave this in the hands of William S. Bowden, Mary G. Brown and William Reynolds of Marblehead." There the court said (86 N. E. 352): "There is nothing to indicate that she intended to make provision generally for the sick and poor of the town, or particularly for those without homes, unless they could be provided with a home in a building to be erected for their use. General provision for the sick and poor would seem to include a charity much broader than anything in her contemplation. The case seems to fall within the class where no intent to use the gift for other charitable purposes can be discovered, if it is impossible to execute the particular charity for which provision is made."

As to the fund in the Honesdale National Bank, representing trust moneys deposited by the decedent during his lifetime under the agreement inter vivos, and by his executor under the provisions of the codicil, we are satisfied, as concluded by the learned court below, that since the direction for the use of the real estate had not been complied with and therefore that portion of the trust failed, these trust funds, the income from which was to be paid "to the officers of the John Randall

Memorial Home", must also revert to the decedent's estate. Since no further disposition of this income was directed either by the inter vivos agreement or by the codicil, it follows that the product of the fund was to be applied to the same uses contemplated by the will itself, that is, the establishment and maintenance of the "John Randall Memorial Home": *Baughman's Estate,* 281 Pa. 23, 39. Consequently, this fund also became part of the res of the "trust created for said purpose" and was subject to the reverter clause of paragraph Sixth of the will. This portion of the trust, being purely ancillary to the main trust and dependent upon it, must of necessity fall when the primary trust itself fails. In *Wood's Estate,* 321 Pa. 164, this court rejected the contention that the failure of the principal trust would not carry with it the ancillary fund.

The appellants further contend that the disposition of that portion of the trust funds, comprising the proceeds obtained from the conversion of testator's other estate under the provisions of paragraph Seventh of his will, on deposit in the Scranton-Lackawanna Trust Company, was rendered res judicata by the report of the Auditor in 1928. With such argument we cannot agree. The auditor, appointed solely to distribute these funds then in the hands of the executor of testator, recommended that they be placed in the Scranton-Lackawanna Trust Company ". . . with instructions that the said fund be maintained in perpetuity, the income thereof, only, be paid to the Overseers of the Poor of Buckingham township [later modified to read "Board of Trustees of the John Randall Home"] for the support of the Poor of Buckingham township, and for necessary repairs of 'John Randall Memorial Home.' " Appellants erroneously argue that this constitutes a finding that the primary purpose of the testator was general poor relief of the township and that such find-

ing binds appellees under the doctrine of res judicata. There was no controversy before the auditor outside of the distribution of the funds in the hands of the executor, and the breadth or scope of the intention of the testator in the creation of the trust in question was not in any way involved. No such issue was then contemplated or presented in any form. In the present proceeding, where the intention of the testator is for the first time in issue, the auditor's recommendation cannot be accorded the effect of broadening or increasing the purpose of the testator.

Furthermore, the fact that, at the hearing before the auditor, the heirs and next of kin of the testator had no notice, were not present, not represented by counsel, and no circumstance as to the contemplation of the testator in the creation of the trust here under consideration was involved, precludes any ruling of res judicata. See *Cameron Bank v. Aleppo Twp.*, 338 Pa. 300, 304.

The trustees argue, finally, that the next of kin are barred by laches. Apart from the fact that this question was not raised in the court below *(Parke v. Pa. T. & F. M. Cas. Ins. Co.*, 334 Pa. 417) and is not embraced within their statement of the questions involved in this appeal *(Van Billiard v. Croft & Allen Co.*, 302 Pa. 349), any delay of which the next of kin may have been guilty can scarcely be said to have injured the trustees. Delay which injures no one does not preclude the right of a litigant to recover his rightful property under these circumstances: *Gribben v. Carpenter*, 323 Pa. 243.

The decree is affirmed; costs to be paid out of the fund. The record is remitted to the court below to determine reasonable attorney's fees for services contracted for by the trustees and for services to be rendered in the preparation and filing of the final account, the same to be paid out of the fund.