447 A.2d 977

**Trust Under the WILL OF Harry T. PORTER, Deceased.**

**Appeal of R. Porter SMITH.**

Superior Court of Pennsylvania.

Argued Jan. 20, 1982.

Filed July 2, 1982.

300

Robert L. Freedman, Philadelphia, for appellant.

Alfred J. Tagliaferri, Philadelphia, for The Right Worshipful Grand Lodge, et al., participating party.

Lawrence Barth, Deputy Attorney General, Philadelphia, for Commonwealth, participating party.

Mary Gleeson Lawler, Philadelphia, for Provident Nat. Bank, participating party.

Before CAVANAUGH, JOHNSON and MONTEMURO, JJ.

JOHNSON, Judge:

This is an appeal from the award by the lower court of a fund of two hundred thousand dollars to The Right Worshipful Grand Lodge of Free and Accepted Masons of Pennsylvania [hereinafter Grand Lodge] under the will of Harry T. Porter [hereinafter testator].

Testator died in 1929. In his will, executed in 1925, he created a trust for his wife as life beneficiary. After her death, certain gifts were to be made to charities from the trust and the income from the trust was to be shared among the testator's niece and nephews for their lives, with a power of appointment in each of them. Clause 11(q) of the will then provided:

(q) Upon the expiration of said trust, and out of the balance remaining in the possession of my said executors and trustees, to pay unto the Right Worshipful Grand Lodge of Free and Accepted Masons of Pennsylvania, the sum of two hundred thousand dollars, to be by it used in the erection and construction of a suitable building upon

its grounds at Elizabethtown, Pennsylvania, as a Home for Boys or Girls, whichever, in the judgment of said Grand Lodge or its Committee on Homes, may be more needed or desirable. Said building shall be of the same general style and character in keeping with the buildings now erected or which may then be erected on said grounds, but before any work shall be done thereon, or the moneys be paid to said Grand Lodge therefor, the plans and specifications for said building shall be first submitted to and receive the approval of my said executors and trustees or their successors in office. When completed said building shall be known as The Harry T. Porter Memorial Home for Boys or Girls, as the case may be, and a suitable tablet so inscribed shall be placed thereon.

Upon the death in 1979 of the last income beneficiary of the trust, the trust terminated. The surviving trustee filed its fourth and final account, and the Grand Lodge filed a petition requesting a modification of the trust, in which petition the Attorney General, as *parens patriae* for charities, joined. The reasons for requesting the modification were that the sum of $200,000.00 in 1979 was inadequate to build a home as described by the testator in 1925, and further that the number of children seeking admission to the Masonic Home in Elizabethtown had declined, and that such children as were there were adequately housed in the already existing buildings. The Grand Lodge accordingly proposed that the fund of $200,000.00 be awarded to the trustees of the Grand Lodge and that the income therefrom be used for maintenance of the existing buildings and for the benefit of the children housed therein, and for youth programs conducted there by the Elizabethtown Freemasons. The fund would be named after the testator and an appropriate plaque installed.

After a hearing the auditing judge decreed that under the doctrine of cy pres the will should be modified and the $200,000.00 awarded to the Grand Lodge.[1] Appellant, who is the only one of five individual residuary beneficiaries to

1. The decree provided specifically:

challenge this modification—the others all supporting the position of the Grand Lodge—filed exceptions to the decree which were dismissed by the Orphan's Court en banc.[2]

On appeal he asserts first that the lower court erred in finding a general charitable intent, and that therefore the cy pres doctrine does not apply, and second that a reverter clause in the will shows an intent that failed bequests, which appellant contends is the case here, should pass to the residuary beneficiaries.

■ The scope of our review of a decree giving effect to the cy pres doctrine is whether or not the lower court misunderstood or misapplied the law or committed a manifest abuse of discretion. *In Re Women's Homeopathic Hospital of Philadelphia*, 393 Pa. 313, 142 A.2d 292 (1958).

The doctrine of cy pres is defined as follows by the Restatement (Second) of Trusts at Section 399:

If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.

Our Supreme Court, over one hundred years ago, stated:

The meaning of the doctrine of *cy pres*, as received by us, is, that when a definite function or duty is to be

That the bequest of $200,000.00 set forth in paragraph 11(q) of the Will of the said Harry T. Porter is hereby modified and an award of the said $200,000.00 is made to the Trustees of the Consolidated Fund of the Grand Lodge to be by said Trustees invested as a separate fund to be known as the Harry T. Porter Memorial Fund and the income therefrom used for the benefit of boys and girls resident at the Masonic Homes at Elizabethtown, Pennsylvania, which Homes are owned and operated by the said Grand Lodge, and for such youth programs as may be conducted at the said Masonic Homes at Elizabethtown, Pennsylvania; and

That a plaque, suitably inscribed, be placed upon the wall of the building presently occupied by the children at the Masonic Homes.

2. *Trust under the Will of Harry T. Porter*, No. 3775 October Term 1929 (Orphans' Ct. Philadelphia, April 22, 1981).

performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close *approximation* to that scheme as reasonably practicable; and so, of course, it must be enforced.

*City of Philadelphia v. Heirs of Stephen Girard*, 45 Pa. 9, 28 (1863).

One of the traditional prerequisites for the application of the doctrine of cy pres is that the will manifest a general charitable intent. In Pennsylvania this requirement has been eliminated by statute since 1947. *See* the Estates Act of 1947[3] and the Probate, Estates and Fiduciaries Code of 1972.[4]

In *Estate of McKee*, 378 Pa. 607, 108 A.2d 214 (1954), in which the adjudication of the Orphan's Court of Philadelphia County was affirmed by our supreme court, it is said, with respect to a will executed in 1899 by a testator who died in 1902 and whose last beneficiary died in 1948:

As to whether or not the Estates Act of 1947, . . . which became effective . . . prior to the date of death of [testator's grandson], and which provides that the Court shall order a distribution of an estate . . . whether his charitable intent be general or specific, has an application to the claim of the heirs and next of kin is not decided. However, this legislation, it can be said, points in the direction

**3.** Act of April 24, 1947, P.L. 100, No. 39, § 10, 20 P.S. § 301.10. The other Pennsylvania statutes which dealt with the doctrine of cy pres were: Act of April 26, 1855, P.L. 328, No. 347, § 10; Act of May 26, 1876, P.L. 211, No. 205; Act of July 7, 1885, P.L. 259, No. 184; Act of May 9, 1889, P.L. 173, No. 193; Act of May 23, 1895, P.L. 114, No. 89, § 1. These were all repealed by the Estates Act of 1947.

**4.** Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S.A. § 6110 (Purdon 1975). The Act was renamed Decedents, Estates and Fiduciaries Code by the Act of December 10, 1974, P.L. 816, No. 271, § 5.

to which the thinking of both the Legislature as well as the Courts was leading.

108 A.2d at 238, and 83 Pa.D. & C. 492, 512.[5]

Similarly, in the case before us, there have been two statutes with this provision enacted since the execution of the will but before the death of the last income beneficiary. However, in view of the fact that the lower court had no difficulty finding a general charitable intent, we too do not need to decide whether the later statutes apply to this case, rather than the 1895 statute which contained no mention of the prerequisite.

In looking at the entire will, *see In Re Pruner's Estate*, 400 Pa. 629, 635, 162 A.2d 626, 629 (1960), we see that testator first made sure that his widow was well provided for. He also provided generously for his sister and his in-laws, on condition that the trust for his widow be created and made certain beforehand. Out of the trust his first consideration was for a small legacy for certain servants. Testator then gave instructions for two trusts, amounting to fifteen thousand dollars, for the benefit of a church, and for about fifty-five thousand dollars' worth of legacies to eight beneficiaries such as hospitals and orphanages. Some of these legacies were outright gifts, some were for the endowment of rooms in memory of himself, his mother or his wife. Next came the life-time income gifts to his niece and nephews, with a power of appointment in each. Then came the provision at issue in this case, where two hundred thousand dollars out of the balance of the terminated trust were to go to the Grand Lodge for the home for children.

Appellant asserts that testator only had a specific intent rather than the general charitable intent found by the lower court. As support for his proposition he cites *In Re Pruner's Estate*, 400 Pa. 629, 162 A.2d 626 (1960). In *Pruner*, the testator bequeathed real estate to two boroughs for a home for orphans, with a reversionary gift over to his niece *if the provisions in the will could not be carried out* by the two

5. The official Pennsylvania supreme court reporter did not reprint the lower court's adjudication.

boroughs, or if the purpose of the home became "invalidated from any cause." 400 Pa. at 632, 162 A.2d at 628. In the next forty years there were altogether only eighteen children who ever lived there, and none at all in the eleven years preceding the lawsuit, despite notification by the boroughs to other agencies in the counties. Our supreme court (COHEN, J., dissenting) decided that, although even specific charitable gifts should be liberally construed, this was a specific gift for a specific charitable purpose, with a specific gift over should the purpose fail. 400 Pa. at 635, 162 A.2d at 629. The purpose having failed, cy pres was not applicable. (Ultimately, the gift over being in violation of the Rule against Perpetuities, the bequest passed by intestacy.)

The holding in *Pruner* is in line with the common law rule that "if property is given in trust to be applied to a particular charitable purpose, and it is provided by the terms of the trust that if the purpose should fail the trust should terminate, the property will not be applied cy pres on the failure of the particular purpose, since the *terms of the trust negative the existence of a general charitable intention*" (emphasis supplied). *See* Comment c to the Restatement (Second) of Trusts § 399. However, we disagree that it is applicable to the facts under the will of Harry T. Porter.

We find, by way of example, two cases where the precise request of the testator could not be carried out but where the gift was used for a closely-related purpose: *In Re Wilkey's Estate*, 337 Pa. 129, 134, 10 A.2d 425, 427 (1940); and *In Re Wanamaker's Estate*, 364 Pa. 248, 72 A.2d 106 (1950). In *Wilkey's Estate*, the court found a general charitable intent where the testatrix's will provided that the residue of her estate go to the trustees of the Presbyterian Church for the building on her land of a church to be named after her. The land was taken by eminent domain. The court therefore awarded her residuary estate to the Presbyterian church trustees for the building of a church on another plot of land. The court found that although it had doubtless been of great significance to testatrix that the

church be built on land owned by her forefathers, she would rather that a church be built somewhere in the vicinity than not at all. In *Wanamaker's Estate,* which was a dispute as to which charity most closely approximated testator's purpose, the will provided for the building of a home for the temporary detention of boys in trouble with the law, so as to avoid their being sent to the House of Correction. As the fund was too small to build such a building, it was awarded to the City of Philadelphia for the purpose of the adding of a dormitory and dining room to an already existing institution for delinquent boys.

Appellant also cites *In Re Randall's Estate,* 341 Pa. 501, 19 A.2d 272 (1941), as the case on point to show a lack of charitable intent in Harry T. Porter's will. The Randall will gave certain real estate to a township to be used as the John Randall Memorial Home for the poor of the township. Testator specified who were to be the trustees, and included his wife as one of them. He provided for a trust the principal of which was not to be disturbed, and the income of which to be used for the home. The will stated, "upon the failure to use the said land for the said Home or should the purpose of this trust fail for any reason whatsoever, . . . the said property and trust . . . shall revert to my estate. . . ." [6]

Randall's nieces and nephews claimed that the trust had terminated by non-user and non-compliance with the will and that the property should revert to the estate. The court agreed. But in *Randall's Estate* the trustees never carried out any of the testator's wishes. The property was let to tenants who agreed to house any indigents whom the trustees might send to them. But in seventeen years only one such person applied for and received such accommodation. The township was a small rural community where there was no apparent need for a home for the poor. To the court it was clear that Randall's main purpose was to establish a Home for the poor of the township and to perpetuate his

6. The statute in force at the time of the execution of the will in 1921, i.e., the Act of 1895, provided that if a charitable trust failed the funds should accrue to the public treasury for the public use.

own memory.[7]  The supreme court found that the findings of the lower court that there was no general purpose to benefit the poor of the township generally was amply supported by the evidence and that this was not the "doubtful" case where the courts will not work a forfeiture.  341 Pa. at 507, 19 A.2d at 275.

Furthermore, in *Randall's Estate* there was the express provision for reverter upon failure of the trustees to use the land as a Home.  On the particular facts of the *Randall* case, the trust had therefore failed, and the court was obliged to order the reversion to Randall's estate.  These facts are distinguishable from the facts of the Porter will, where the fund is only now available and the beneficiaries willing to use the funds in a way as close as possible to testator's purpose.

Appellant's second argument involves the reverter clause in item 15 of the Porter will, which provides:

IT IS my intention and desire that I shall not die intestate as to any part of my estate, and if for any reason or cause, any of the legacies hereinbefore given shall fail, then such legacies shall revert to and become part of my residuary estate and shall go and be disposed of as hereinbefore directed and provided.[8]

■  We do not agree that the reverter clause is a specific alternate provision in the event the Grand Lodge does not build a building.  A look at the entire will shows a combined concern to provide for his family and to give to certain charities, mostly for the young, the poor and the sick.  Most of the charitable bequests have their own alternate beneficiaries.  In clause 14 testator indicated that he wanted the individual legacies to be paid first, and then if the funds left

7.  Self-glorification, however, does not vitiate the charitable nature of a trust.  *Estate of McKee,* 378 Pa. 607, 108 A.2d 214, 234 (1954) [83 Pa.D.&C. 492, 503]; *Wilkey's Estate,* 337 Pa. 129, 134, 10 A.2d 425, 428 (1940).

8.  *See* note 6, *supra.*

over were insufficient to pay the charitable bequests in full that these abate proportionately.

There is nothing in the language of clause 15 which supports the argument that it is a gift over should the Grand Lodge not build a building as provided. It is a more general provision providing that any lapsed or otherwise failed gifts not pass by intestacy but into the residue into which they would become absorbed and from which they would be distributed according to the decedent's testamentary plan.

The Freemasons are an ancient society which came to North America from England, Scotland and Ireland in the early decades of the eighteenth century. In 1734, incidentally, Benjamin Franklin was elected grand master of the Masons in Pennsylvania. By the mid-twentieth century there were forty-nine independent grand lodges in the United States. Belief in God, the presence of the Holy Bible on the altar, the forbidding of any political activity or discussion within the lodge, strict nonsectarianism in religion, and cognizance of moral law are among the fundamentals adhered to by all grand lodges. Freemasonry has been described as the joining together of men from all walks of life in an adherence to a moral code whose principles are largely conveyed through symbols and allegories connected with the art of building, emphasizing benevolence. It was written in the eighteenth century that a Mason is "to be a Man of Benevolence and Charity, not sitting down contented while his Fellow Creatures, but much more his Brethren, are in Want, when it is in his Power (without prejudicing himself or Family) to relieve them." William Smith, *A Pocket Companion for Free-Masons* (London 1735).[9]

It seems highly unlikely that testator envisaged that his gift to the Freemasons would ever fail. He possibly did not envisage that twentieth century social programs would alleviate the need for institutional homes for children. We are persuaded that his intention was to benefit children,

**9.** *See* 9 Encyclopaedia Britannica 732–737 (1963).

through the offices of the Freemasons with their tradition for benevolence.

A further point we must make is that even were the reverter clause to be applicable here, the purpose of the gift to the Masons did not *fail*. The Grand Lodge is still in existence. The Homes at Elizabethtown are flourishing. Simply, a new building to house children there is not needed, and if it were, $200,000.00 would not build one.

At a hearing on the Petition for Modification, the Honorable Walter P. Wells, Grand Master of the Masons in Pennsylvania, testified as to the need for the requested modification of decedent's will. The record establishes that three fine buildings were provided under prior bequests for the children at the Masonic Homes, and that all of the children are living in one of those buildings at the present time. As a member of the Committee on Masonic Homes, and of the Committee on Finance, Judge Wells testified that the sum of $200,000, if bequeathed to the Trustees of the Consolidated Fund of the Grand Lodge, could be segregated and held as a separate fund, the income from which could be used for the maintenance of children and for youth programs at the Masonic Home.

Based upon the uncontradicted testimony of the Grand Master and the averments contained in the Petition, the learned Auditing Judge found that there existed homes for boys and girls at Elizabethtown, Pennsylvania, and that the erection of additional buildings was both unnecessary and impractical. With this finding Appellant agrees. The Auditing Judge concluded that the closest approximation of testator's intention would be to apply the income from the $200,000 fund to be used to benefit those children still in residence at the Homes and the youth programs that are being conducted there. After a careful review of the entire record and the applicable law, we have no difficulty in affirming these findings and conclusions of the learned Auditing Judge.

We believe that the doctrine of approximation set forth in *City of Philadelphia v. Heirs of Stephen Girard, supra,* applies to the facts of this case. The decree of the lower court approximates the testator's express intention as nearly as possible and does no violence thereto. Through the award of the trust corpus to the Grand Lodge, the income will be used for the maintenance of boys and girls at the Masonic Homes in Elizabethtown. The fund will be segregated and known as the Harry T. Porter Memorial Fund. A plaque, suitably inscribed, will be placed upon the wall of the building currently occupied by the children at the Masonic Homes. This is the classic situation for the application of the cy pres doctrine.[10]

Appellant has not met his burden of showing a manifest abuse of discretion. *See In Re Kensington Hospital for Women,* 358 Pa. 458, 58 A.2d 154 (1948). The lower court correctly applied the doctrine of cy pres. The decree is therefore affirmed.

10. *See Estate of McKee,* 378 Pa. 607, 108 A.2d 214 (1954) (testamentary trust directed institution of naval college for orphan boys; institution impossible, yet no satisfactory alternative institution found; under cy pres, fund *to* be used for scholarships for orphan boys seeking an education similar to that which testator intended to provide); *In Re Williams' Estate,* 353 Pa. 638, 46 A.2d 237 (1946) (testamentary trust for the establishment in testatrix's home of a home for aged women of the county; failure for insufficient funds; under cy pres funds awarded to hospital which would use her home for ailing and convalescent aged women of the county); *In Re Wilkey's Estate, supra; Dunlap Trust,* 29 Pa.Fiduc. 573 (1979) (trust to establish home for the orphans of printers of Philadelphia; funds insufficient, but cy pres applicable); *Vaughn Estate,* 69 Pa.D.&C.2d 32 (1974) (trust for establishment of home for aged and infirm women; funds insufficient; cy pres given effect and funds awarded to newly built nursing home for aging sick and infirm women, one wing of which to be named after testator). *Contrast In Re White's Estate,* 340 Pa. 92, 16 A.2d 394 (1940), where settlor created a trust for the benefit of a certain Home for the care of her retarded daughter. The trust provided that after the daughter's death the residue of the trust be given to the Home. After the settlor's death the Home reneged, and declined to accept the trust or to care for the daughter. After the daughter's death, the court found that the residuary gift to the Home was not a charitable gift but merely a contractual one, and therefore the cy pres doctrine could not be given effect to benefit another Home where the daughter lived for a little more than a year before she died.