In re ESTATE OF George W. ELKINS, Deceased, Sur Trust f/b/o Hahnemann Hospital, Appellees.

Appeal of Temple University Hospital, Appellant.

In re Estate of George W. Elkins, Deceased, Sur Trust f/b/o Hahnemann Hospital, Appellees.

Appeal of Jefferson Health System and All Entities Associated With Jefferson Health System, Appellants.

In re Estate of George W. Elkins, Deceased, Sur Trust f/b/o Hahnemann Hospital, Appellees.

Appeal of Children's Hospital of Philadelphia, Appellant.

In re Estate of George W. Elkins, Deceased, Sur Trust f/b/o Hahnemann Hospital, Appellees.

Appeal of Pennsylvania Hospital of the University of Pennsylvania Health System, Appellant.

In re Estate of George W. Elkins, Deceased, Sur Trust f/b/o Hahnemann Hospital, Appellees.

Appeal of Girard Medical Center of the North Philadelphia Health System, Appellant.

In re Estate of George W. Elkins, Deceased, Sur Trust for Hahnemann Hospital Under Item 17(B), Appellees.

Appeal of Albert Einstein Medical Center and All Entities Associated With Albert Einstein Medical Center, Appellants.

In re Estate of George W. Elkins, Deceased, Sur Trust f/b/o Hahnemann Hospital, Appellees.

Appeal of St. Joseph's Hospital of the

**North Philadelphia Health System, Appellant.**

Superior Court of Pennsylvania.

Argued April 5, 2011.

Filed Sept. 1, 2011.

770

Joseph P. McDonald, Jamison, for Temple University Hospital, appellant.

Thomas K. Johnson, II, Philadelphia, for Albert Einstein Healthcare, appellant.

Patrick M. Northen, Philadelphia, for Children's Hospital of Philadelphia, appellant.

Benjamin R. Neilson, Philadelphia, for Estate of Elkins, appellee.

Lawrence Barth, Philadelphia, for Office of Attorney General, appellant.

Jennifer L. Nevins, Reading, for Pennsylvania Hospital, appellant.

Margaret E.W. Sager, West Conshohocken, Nancy L. Winkelman, Philadelphia, for Philadelphia Health & Education, appellant.

John D. Kutzler, Philadelphia, for St. Joseph's Hospital and Girard Medical Center, appellant.

Marvin L. Wilenzik, Blue Bell, for Thomas Jefferson Health System, appellant.

BEFORE: STEVENS, P.J., BENDER, BOWES, PANELLA, DONOHUE, SHOGAN, MUNDY, OTT, and FREEDBERG, JJ.

OPINION BY BOWES, J.:

Appellants herein are various Philadelphia-area hospitals contesting the orphans' court's determination that Appellee, the Philadelphia Health & Education Corporation ("PHEC"), is the appropriate *cy pres* beneficiary of a trust created under the last will and testament of George W. Elkins. We affirm.

This matter enjoys a complex procedural background, which we must outline to promote a better understanding of the issues presented on appeal. George W. Elkins died testate on October 23, 1919. In item numbered seventeen of his May 3, 1919 will, he established two perpetual charitable testamentary trusts, one for Abington Memorial Hospital ("Abington") and the other for Hahnemann Hospital. The trusts provided in pertinent part:

(a) I give and bequeath Five Hundred Thousand Dollars ($500,000.) unto my Trustees hereinafter named, IN TRUST as is more fully set out hereafter, for the Abington Memorial Hospital, now in Abington, Montgomery County, Pennsylvania.

(b) I give and bequeath Five Hundred Thousand Dollars ($500,000.) unto my Trustees hereinafter named IN TRUST, as is more fully set out hereunder, for the Hahnemann Hospital, of the City of Philadelphia.

. . . .

(f) In the case of the two trusts for the Hospitals, aforesaid, I direct that my Trustees shall pay over the income therefrom semi-annually to the Trustees of the said Hospitals to be used by them as their discretion may dictate for the best interests of the charity administered by them, save only that the said moneys shall not be used as a building fund.

The present litigation had its inception when PNC Bank, N.A. (the "trustee"), then the sole successor trustee of the trusts in question, filed the fifth account, which covered the period from March 9, 1971, to December 5, 2003, for the trust established for the benefit of Hahnemann Hospital. At that time, the trustee also requested an adjudication that the charitable trust for the benefit of Hahnemann Hospital had failed. The successor hospital to Hahnemann Hospital had been purchased by Tenet Health Systems, Inc., a for-profit corporation, and the non-profit that originally received all the hospital endowments had dissolved. The trustee tendered PHEC, whose affiliation with Hahnemann Hospital will be more fully delineated, *infra*, as the appropriate *cy pres* beneficiary of the Hahnemann Hospital trust.

The account was called for audit on January 5, 2004. The trustee duly notified the Office of the Attorney General of Pennsylvania as *parens patriae* for charitable organizations of these proceedings, however, that office did not take a position on the matter. The orphans' court thereafter scheduled a hearing on whether the purpose of the Hahnemann Hospital trust had failed and, if so, which organization was the appropriate *cy pres* beneficiary of that trust. The orphans' court also ordered that Abington receive notice of the proceedings.

The hearing was conducted on May 27, 2004, where the trustee presented a single witness, Jeffrey A. Eberly. Mr. Eberly first outlined the history of Hahnemann Hospital. That institution was founded in 1848 as the Homeopathic College of Pennsylvania. In 1869, the official name of the organization was changed to Hahnemann Medical College and Hospital. In 1869, Hahnemann Medical College and Hospital educated new doctors, employed physicians for patient care, and operated a hospital. Mr. Eberly testified that while that institution "was officially known as Hahnemann Medical College and Hospital," it was "generally referred to as Hahnemann Hospital." N.T. Hearing, 5/27/04, at 4.

Mr. Elkins's association with Hahnemann Medical College and Hospital began in 1890 when he was appointed to its board of directors, and he remained on the board until his death in 1919. During the 1917–1918 session, Mr. Elkins also served on the college committee of the board of trustees. Additionally, Mr. Elkins's family had been generous to Hahnemann Medical College and Hospital.

In 1982, Hahnemann Medical College and Hospital became a component of Hahnemann University. Allegheny Health, Education and Research Foundation ("AHERF"), a non-profit corporation, acquired Hahnemann University in 1993. AHERF also controlled other medical schools and a hospital and medical school called the Medical College of Pennsylvania. Due to federal regulations enacted to prevent physician referrals to certain related organizations, AHERF split its two hospitals from its two medical schools and then merged both medical schools and both hospitals. Specifically, AHERF split the hospital and medical college of the Medical College of Pennsylvania and the hospital and medical college of Hahnemann Medical College and Hospital. AHERF then merged the medical school of the Medical College of Pennsylvania and the medical school of Hahnemann Medical College and University as well as the other medical schools that it controlled. The medical schools were collectively renamed Allegheny University of the Health Sciences. The hospital of the Medical College of Pennsylvania and the hospital of the Hahnemann Medical College and Hospital were merged. The merged hospitals were referred to as the Allegheny University Hospitals and remained non-profits. Mr. Elkins's Hahnemann Hospital trust was transferred to the Allegheny University Hospitals.

In 1998, AHERF filed for bankruptcy. Tenet purchased the Allegheny University Hospitals and, as a for-profit corporation, was ineligible to receive any charitable endowments being paid to the Allegheny University Hospitals, including Mr. Elkins's Hahnemann Hospital trust. As a result, two non-profit organizations were formed. First, PHEC was created to own and operate four health-related schools: a school of medicine, a school of nursing, a school of public health, and a school of health professionals. Later, Drexel University exercised options and purchased all of the schools with the exception of the school of medicine. Thus, at the time of

the May 2004 hearing, PHEC owned only the school of medicine, which it operated under the fictitious name of Drexel University College of Medicine. PHEC's mission was three-pronged: education, research, and clinical care, which included caring for patients in the space formerly known as Hahnemann Hospital. PHEC employed 340 physicians and approximately 210 worked at the facility formerly known as Hahnemann Hospital. In 1998, PHEC received the AHERF endowments for scholarship funds, research chairs, and professorship support.

The Philadelphia Health and Research Corporation ("PHRC"), was the second non-profit organization created to receive charitable endowments when Tenet purchased the Allegheny University Hospitals. The PHRC was created in order to receive the charitable assets of AHERF entities related to research and patient care, including all of the hospital endowments. The transfer of the charitable assets of AHERF to PHEC and PHRC was approved by the orphans' court in 1998.

In 2003, after disputes between PHEC and PHRC arose, PHRC dissolved and transferred its assets to PHEC. With approval of the Philadelphia County Court of Common Pleas, orphans' court division, other hospital endowments that were being paid to PHRC were transferred to PHEC. At the time of the May 2004 hearing, those hospital endowments were being "spent [by PHEC] for community programs around the hospital, for clinics and other unrestricted purposes that are not directly with the hospital but around the communities." N.T. Hearing, 5/27/04, at 30. For example, some of the funds underwrote a federally-qualified health center providing clinical care to the community in the Chinatown section of Philadelphia.

At the May 2004 hearing, Abington agreed that the charitable purpose of the Hahnemann Hospital trust failed when Tenet acquired the assets of the Allegheny University Hospitals and subsequently PHRC, the non-profit which received the hospital endowments, dissolved. Abington next presented countervailing evidence refuting PHEC's position that it should be the *cy pres* beneficiary. Abington proved that Mr. Elkins had a close association with it and maintained that it was the appropriate *cy pres* beneficiary of the Hahnemann Hospital trust.

After the hearing, on December 30, 2004, the orphans' court issued its first adjudication, agreeing that under the circumstances presented, the charitable purpose of Mr. Elkins's Hahnemann Hospital trust had failed. The orphans' court then decided that Abington, rather than PHEC, was the appropriate *cy pres* beneficiary of the Hahnemann Hospital trust. It concluded that due to the wording of the Hahnemann Hospital trust, it was evident that Mr. Elkins sought to fund a hospital rather than a medical college and that the primary charitable functions of PHEC were different from those that Mr. Elkins contemplated when he established the Hahnemann Hospital trust.

Based upon Mr. Elkins's close association with Abington, coupled with the fact that it continued to be a community hospital, the orphans' court held that Abington was the appropriate *cy pres* beneficiary of the Hahnemann Hospital trust. While the orphans' court acknowledged that by creating the trust, Mr. Elkins's intent was to benefit the area formerly served by the Philadelphia-based Hahnemann Hospital, it observed that many of Abington's patients were Philadelphia residents.

PHEC appealed the ruling, and a panel of this Court vacated and remanded for further proceedings. *In re Estate of El-*

*kins,* 888 A.2d 815 (Pa.Super.2005). PHEC raised two issues before that panel that are pertinent in this appeal. It first claimed that the doctrine of *cy pres* was inapplicable because PHEC was the sole successor organization to Hahnemann Medical College and Hospital. PHEC asserted that it was continuing Hahnemann Hospital's charitable purpose by educating and training doctors, conducting medical research, and providing patient care at the former Hahnemann Hospital facility and at neighborhood medical clinics in downtown Philadelphia.

That panel affirmed that the doctrine of *cy pres* applied. In so doing, it discredited PHEC's position that it was the successor entity to Hahnemann Hospital. In light of the history of the various organizations in question, the panel noted that PHEC was a successor to the medical school of Hahnemann Medical College and Hospital rather than to the hospital of that institution. Rejecting PHEC's position, the panel concluded that the court did not abuse its discretion in finding that there was a failure of the trust's charitable purpose by the purchase of the Allegheny University Hospitals by the for-profit Tenet and the ensuing dissolution of PHRC, the nonprofit that assumed the hospital endowments formerly benefiting Hahnemann Medical College and Hospital.

The panel nevertheless agreed with PHEC's second contention that the orphans' court erred in determining that Abington was the proper *cy pres* beneficiary. It found that Mr. Elkins intended to specifically benefit the Philadelphia area in the vicinity of the Hahnemann Hospital when he created the Hahnemann Hospital trust. The panel noted that the record did not support the orphans' court's finding that residents of Philadelphia who previously utilized the services of Hahnemann Hospital were served by Abington. It ob-served that in the Hahnemann Hospital trust, Mr. Elkins identified the hospital and particularly named the City of Philadelphia as the recipients of his largesse. The panel thus determined that Mr. Elkins intended to benefit the residents of the area formerly served by Hahnemann Hospital. The panel remanded the "matter for further proceedings after notice is given to eligible hospitals or other entities performing hospital-like operations that are located closer in proximity to the area served by the former Hahnemann Hospital." *Id.* at 827–28. Notably, PHEC was not excluded from the pool of eligible *cy pres* beneficiaries.

After the Supreme Court denied review to both PHEC and Abington, the matter was remanded. The orphans' court instructed the trustee to provide notice of a new *cy pres* hearing to the institutions performing hospital-like operations in the area formerly served by Hahnemann Hospital. By the time of the hearing, seven institutions, including PHEC, staked a claim to *cy pres* status. Those claimants included Appellants Temple University Hospital, The Children's Hospital of Philadelphia, St. Joseph's Hospital, Girard Medical Center, Jefferson Health System, Pennsylvania Hospital and Albert Einstein Medical Center.

At the two-day hearing conducted on remand, each claimant presented witnesses knowledgeable about the hospital-like activities and area served by their particular institutions. The orphans' court concluded that PHEC was the institution that Mr. Elkins would have chosen as the recipient of his largesse had he been aware of the failure of Hahnemann Hospital's charitable purpose. The court tailored a comprehensive order that mandated that PHEC utilize the funds from Mr. Elkins's Hahnemann Hospital trust solely in pursuit of its hospital-like services and en-

sured that a proper accounting would be made:

1. The income accumulated in the Trust established under Item 17(b) of the Will of George W. Elkins for the benefit of Hahnemann Hospital shall be distributed by the trustee, PNC Bank, N.A., to Philadelphia Health and Education Corporation ("PHEC") to use in providing medical care and community programs at Hahnemann University Hospital or in clinics operated by PHEC in the area served by Hahnemann University Hospital.

2. PHEC shall receive future distributions of income from the Hahnemann Trust in accordance with Item 17(b) of the Will of George W. Elkins.

3. PHEC shall provide annual reports to the Attorney General and PNC Bank, N.A., as trustee, or any duly appointed successor trustee, as to how it used the prior year's income distributed from the Hahnemann Trust.

4. PHEC shall immediately notify the Attorney General and PNC Bank, N.A., as trustee, or any duly appointed successor trustee, if (a) the Academic Affiliation Agreement is terminated for any reason; (b) Tenet files for bankruptcy or undergoes any other corporate change or sale that would make fulfillment of the Academic Affiliation Agreement impossible or impractical; (c) PHEC ceases to exist; or (d) PHEC ceases to perform services at Hahnemann University Hospital.

Order of Court, 7/13/09, at (unnumbered) 1–2.

These seven appeals by the losing claimants, which were consolidated for review, followed. After a panel of this Court reversed, PHEC successfully obtained *en banc* review, and the panel decision was withdrawn. Appellants present these arguments for our review:

1. Did the Orphans' Court err in awarding the accumulated income and all future income from the trust established by the will of George W. Elkins for the benefit of Hahnemann Hospital to the Philadelphia Health and Education Corporation as the appropriate *cy pres* beneficiary when, among other things, the Philadelphia Health and Education Corporation is not a hospital, does not operate a hospital, and does not most closely approximate the object Mr. Elkins intended to benefit?

2. Whether the Orphans' Court departed from the well-settled law of the case by reversing its previous decision that the Philadelphia Health and Education Corporation was not the appropriate *cy pres* beneficiary because it is not a hospital, which decision was not vacated by this Court on appeal.

Appellants' brief at 5.

■ Initially, we set forth our standard of review:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably

wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Miller,* 18 A.3d 1163, 1169 (Pa.Super.2011) (*en banc*).

We address Appellants' arguments in reverse order since, if the orphans' court violated the doctrine of the law of the case, we would not need to review the first question. "The law of the case doctrine sets forth various rules that embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Ario v. Reliance Insurance Co.,* 602 Pa. 490, 980 A.2d 588, 597 (2009).

> Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326, 1331 (1995). Accordingly, under the pertinent authority, in a second appeal, this Court cannot change resolution of a legal question actually decided by a prior panel of this Court.

Turning to the second prong of the law-of-the-case doctrine first, the issue is whether, in the prior appeal, we rejected PHEC as an appropriate *cy pres* beneficiary. After careful consideration of the panel decision in *In re Estate of Elkins, supra,* we conclude that the panel did not render

a ruling in that respect. Therein, PHEC was the appealing party and it claimed that the *cy pres* doctrine was inapplicable in the first instance because the charitable purpose of the Hahnemann Trust had not failed. Its specific position, however, was carefully tailored to establish that it was the successor institution to Hahnemann Hospital.

After outlining the complex history of the various institutions, the prior panel rejected PHEC's position that it was the entity which succeeded to the hospital aspect of the original institution known as the Hahnemann Medical College and Hospital. The prior panel noted that PHRC was the organization that eventually acquired the hospital operations of Hahnemann Medical College and Hospital. It therefore affirmed the finding that Mr. Elkins's Hahnemann Hospital trust had failed in its charitable purpose because AHERF ultimately sold Allegheny University Hospitals to a for-profit entity and PHRC dissolved. The panel never stated that PHEC was not eligible to become a *cy pres* beneficiary; indeed, that issue was not discussed. The precise issue addressed was whether PHEC was the successor legal entity to Hahnemann Hospital and that issue was answered in the negative.

Nevertheless, the prior panel simply did not analyze whether Mr. Elkins would have chosen PHEC over other area hospitals as the *cy pres* beneficiary. While the panel affirmed the finding that Mr. Elkins sought to benefit Hahnemann Hospital rather than its medical college, we never ruled that PHEC could not be the *cy pres* beneficiary if PHEC could establish that it rendered services similar to that of a hospital. Particularly revealing is the fact that the prior panel specifically required that notice of the *cy pres* hearing be given to both hospitals and entities that render

hospital-like services to the community served by the former Hahnemann Hospital.

In this respect, we cannot ignore the realities of the evolution of medical care. Medical procedures that were formerly conducted only in hospitals are now performed in clinical and out-patient settings. This fact is critical because Mr. Elkins strove to support care administered in hospitals rather than the physical structure itself. If medical care formerly provided in hospitals is now performed in clinics, this fact becomes relevant in determining whom his money should benefit.

■ The first aspect of Appellants' law-of-the-case argument relates to whether the orphans' court was permitted to reverse its earlier finding that PHEC was not the appropriate *cy pres* beneficiary of the Hahnemann Hospital trust because PHEC is not a hospital. In the absence of a prior appellate ruling to the contrary, it is clear that the doctrine of the law of the case does not prevent a court from revisiting and revising its own prior ruling. *Clearwater Concrete & Masonry, Inc. v. West Philadelphia Financial Services Institution*, 18 A.3d 1213, 1216 (Pa.Super.2011) ("A trial judge may always revisit his own prior pre-trial rulings in a case without running afoul of the law of the case doctrine; by its terms, the doctrine only prevents a second judge from revisiting the decision of a previous judge of coordinate jurisdiction or of an appellate court in the same case."). Further, significantly more evidence of PHEC's hospital-like activities was adduced at the second hearing.

■ Having rejected Appellants' position that the doctrine of the law of the case prevented PHEC from being named as *cy pres* beneficiary, we now examine their position that the orphans' court's determination in that respect was erroneous.

Initially, we must point out that this Court employs a highly deferential standard of review of the orphans' court's determination as to whom should be accorded *cy pres* beneficiary status. *In re Women's Homeopathic Hospital of Philadelphia*, 393 Pa. 313, 142 A.2d 292 (1958). The orphans' court enjoys broad discretion in this respect and will not be reversed absent a clear abuse of discretion. *Id.* "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused." *Id.* at 294 (quoting *Echon v. Pennsylvania Railroad Company*, 365 Pa. 529, 76 A.2d 175, 178 (1950)).

As the Court noted in *In re Women's Homeopathic Hospital of Philadelphia, supra*, the Restatement of Trusts § 399 has been adopted as the best expression of the doctrine of *cy pres*. Restatement (Second) of Trusts at Section 399 provides:

> If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.

The doctrine itself was formerly embodied in the Probate, Estates, and Fiduciaries Code ("PEF Code") § 6110(a), 20 Pa. C.S. § 6110, but is currently located at PEF Code § 7740.3, as part of the Uniform Trust Act. Section 7740.3, which governs charitable trusts, states:

**(a) General rule.**—Except as otherwise provided in subsection (b), if a particular charitable purpose becomes unlawful, impracticable or wasteful:

(1) the trust does not fail, in whole or in part;

(2) the trust property does not revert to the settlor or the settlor's successors in interest; and

(3) the court shall apply *cy pres* to fulfill as nearly as possible the settlor's charitable intention, whether it be general or specific.

▇▇▇▇ In practice, application of the doctrine of *cy pres* is imprecise but the endeavor is to find the institution that "will most nearly approximate the intention of the donor." *In re Women's Homeopathic Hospital of Philadelphia, supra* at 294. The key is approximating the express direction of the testator as nearly as possible by transferring the funds to an institution that the decedent would have wished to receive the funds had the decedent been aware of the situation that occurred following his demise. *Id.* The only stricture is that the charity must be within the general donative scheme outlined by the testator. *Id.; see also In re Farrow,* 412 Pa.Super. 135, 602 A.2d 1346 (1992).

Appellants' position that PHEC is not the appropriate *cy pres* beneficiary of the Hahnemann Trust rests upon a simple syllogism: It is clear that Mr. Elkins intended to benefit a hospital when he created the Hahnemann Trust and PHEC concededly is not a hospital; rather, its primary purpose is to educate medical personnel. Hence, PHEC cannot be the *cy pres* beneficiary. We acknowledge that Mr. Elkins intended to benefit a hospital located at the Hahnemann facility; however, that is not the inquiry presently before us.

At issue herein is upon what institution Mr. Elkins would have bestowed the bene-fit of his trust had he known that Hahnemann Hospital failed in its charitable purpose. The facts reveal substantial record support for the orphans' court's determination that PHEC serves the precise community that Mr. Elkins desired to benefit when he created this trust. More importantly, the orphans' court's finding that PHEC performs a variety of functions that were historically performed by hospitals rests upon solid ground. Upon remand, the orphans' court noted that it held a two-day hearing and heard evidence not presented at the original *cy pres* hearing about the nature and extent of hospital operations performed by PHEC both in the building now owned by Tenet and using the name Hahnemann University Hospital as well as at clinics near that locale. The orphans' court comprehensively outlined the hospital-like services performed by PHEC for patients at the former Hahnemann Hospital facility.

Indeed, the extent of PHEC's hospital-related activities are impressive and comprehensive. PHEC provides the physician services in pathology, emergency medicine, and radiation oncology at the hospital now owned by Tenet, which is named Hahnemann University Hospital. PHEC physicians provide all levels of doctor care at Hahnemann University Hospital, including tertiary and quaternary medical services. They are also in operating rooms, delivering babies, and making rounds.

Tenet requires that each physician on the staff at Hahnemann University Hospital hold a faculty appointment from PHEC. Of the 441 faculty physicians at Hahnemann University Hospital, PHEC employs 250 of these doctors as full-time faculty members. These faculty physicians receive their paychecks solely from PHEC. In their clinician roles, these PHEC-employed faculty physicians have

active practices at Hahnemann University Hospital, providing virtually all of the obstetrical care ("OB") and most of the doctor and surgical care.

PHEC also employs five hospitalists, who are part of a team that provides coverage and care twenty-four hours a day, seven days a week to hospitalized patients in the internal medicine department at Hahnemann University Hospital. Thus, PHEC is the physician practice providing medical care in the hospital building owned and operated by Tenet doing business as Hahnemann University Hospital.

Additionally, at Hahnemann University Hospital, some of the PHEC-employed physicians are the service chiefs for key departments, including internal medicine, surgery, anesthesiology, emergency medicine, radiology, pathology, psychiatry, radiation oncology, obstetrics and gynecology, and dermatology as well as others. As service chiefs, these PHEC-employed faculty physicians are responsible for delivering care, improving quality control, educating nurses, obtaining administrative support, organizing doctors' call lists, and setting operating room schedules.

Outside of the hospital building, PHEC runs clinics on or adjacent to the campus of Hahnemann University Hospital. Specifically, PHEC manages an ambulatory care clinic, an HIV/AIDS clinic, a wound care center, a women's health care clinic providing general medicine and prenatal care services, an OB/GYN clinic, an ambulatory endoscopy center, an infusion center, a noninvasive vascular lab, a psychiatry clinic, and a heart and valve clinic. At these various clinics, PHEC employs the doctors, nurses, and administrative staff, and is responsible for their entire operation.

PHEC began operating and managing the ambulatory care clinic, the women's health care clinic, and the wound care cen-

ter when Tenet announced plans to close these clinics because they were not profitable. The general medical clinic used to be a hospital clinic, but when Tenet announced in 2006 that it did not wish to administer it anymore, PHEC assumed responsibility for administering that facility and entirely replaced Hahnemann University Hospital as its owner and operator. In 2002, PHEC assumed the same responsibility for the OB clinic for prenatal care. In that clinic, through its doctors and nurse midwives, PHEC provides essential obstetrics and gynecological services at five different Philadelphia Health Centers located within five miles of the Hahnemann University Hospital campus. At the aforementioned clinics, which operate at a loss, PHEC is providing medical care and services to the uninsured, underinsured, and indigent population of Philadelphia living in the vicinity formerly served by Hahnemann Medical College and Hospital and now called Hahnemann University Hospital.

Other clinics operated by PHEC perform procedures on an out-patient basis that would have been provided inside the hospital setting during Mr. Elkins's lifetime. These ambulatory clinics are state-accredited, freestanding surgical centers not physically attached or necessarily affiliated with Hahnemann University Hospital. For example, the ambulatory endoscopy center, known as the Drexel Centers for Digestive Health, performs invasive procedures, such as endoscopies, colonoscopies, stomach endoscopies, and esophagoduodenscopies. At the infusion center, patients not in the present-day hospital would receive intravenous chemotherapy, antibiotics or pain management medications.

One day a week, PHEC operates the Chinatown Clinic of Drexel University College of Medicine at the Holy Redeemer

Chinese Catholic Church at 915 Vine Street in Philadelphia, which is five blocks from Hahnemann University Hospital, where it nightly treats twenty-five to forty-five patients without health insurance.

PHEC promised to utilize the funds from Mr. Elkins's Hahnemann Hospital trust solely to provide patient services at Hahnemann University Hospital or the nearby clinics. It also agreed to inform the court if PHEC ceases to provide medical services at Hahnemann University Hospital and the nearby clinics.

Based upon this overwhelming evidence and PHEC's on-site presence at the facility formerly known as Hahnemann Hospital, the orphans' court observed:

If Mr. Elkins could be resurrected for a day, he no doubt would be astounded by the scope and degree of medical care and procedures that can be provided in out-patient facilities today without the need for the hospital setting and overnight monitoring. In this vein, this Court believes that Mr. Elkins would want the funds from his Hahnemann Trust to stay in the area of the former Hahnemann Hospital, serving the people there and providing them with all levels of medical care in the hospital building, now owned by Tenet, in the nearby clinics operated by PHEC, and at nearby facilities owned by third-parties.

Trial Court Opinion, 7/13/09, at 19–20. The court carefully constructed an order that will ensure that the money from Mr. Elkins's Hahnemann Hospital trust will be used to further Mr. Elkins's primary purpose in creating this trust: providing medical services to patients in the area previously served by Hahnemann Medical College and Hospital.

■ As we noted in *Will of Porter*, 301 Pa.Super. 299, 447 A.2d 977, 979 (1982) (emphasis in original) (quoting *City of Philadelphia v. Heirs of Stephen Girard*, 45 Pa. 9, 28 (1863)):

The meaning of the doctrine of *cy pres*, as received by us, is, that when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close **approximation** to that scheme as reasonably practicable; and so, of course, it must be enforced.

Contrary to Appellants' position, we cannot ignore the vast changes in the dissemination of medical care that have occurred since 1919. Services that would have been performed in a hospital in that era are now performed in out-patient clinics, such as those being operated by PHEC. Furthermore, the fact that none of Appellants was named in Mr. Elkins's will is relevant herein because they were all, with a single exception, in existence in Philadelphia at the time of his death and were not the recipients of his charity. Additionally, Mr. Elkins did not enjoy a close association with Appellants. Rather, Mr. Elkins and his family had a devoted relationship with Hahnemann Medical College and Hospital, and other family members directed gifts to that institution. Mr. Elkins personally served on the board of directors of Hahnemann Medical College and Hospital and was appointed to a committee involved in the operations of the medical college.

Finally, Appellants' singular focus on the fact that they are hospitals and that PHEC is not a hospital is eroded as a basis of reversal when one considers that Mr. Elkins specifically delineated that his money not be used to pay for any hospital structure. This language supports the orphans' court's conclusion that Mr. Elkins was primarily concerned with the provision of medical services rather than the hospital building itself. The orphans' court ad-

mirably considered the significant amount of medical care rendered to patients by PHEC and other relevant factors to carefully determine what institution Mr. Elkins would have chosen had he been aware of the present situation.

In light of those applicable facts, we cannot conclude that the orphans' court overrode or misapplied the law or that it exercised its judgment in a manifestly unreasonable manner or that its ruling resulted from partiality, prejudice, bias, or ill will. Hence, we do not find an abuse of discretion and affirm.

Order affirmed.